1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  MEREDITH B. OSBORN, State Bar #250467
   Chief Trial Deputy
3  SHEILA S. JOHNSON, State Bar #284468
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, Sixth Floor
5  San Francisco, CA  94102-5408
   Telephone:    (415) 554-4230
6  Facsimile:    (415) 554-3837
   E-Mail:       sheila.johnson@sfcityatty.org
7
8  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO
   SHERIFF DEPUTIES NGUYEN, SENG, MILLS, PRADO,
9  CHIEF DEPUTY SHERIFF TILTON, and LT. SHERIFF SHANNON
10
11                 UNITED STATES DISTRICT COURT
12               NORTHERN DISTRICT OF CALIFORNIA
13  CENIOUS BREWSTER,                    Case No. 20-CV-3254-HSG
14         Plaintiff,                    **DEFENDANTS' NOTICE OF MOTION AND
                                         MOTION FOR SUMMARY JUDGMENT**
15         vs.
                                         Hearing Date:    July 15, 2021
16  CITY AND COUNTY OF SAN               Time:            2:00 p.m.
   FRANCISCO, STEPHEN TILTON, JAMES      Courtroom:       2, 4th Floor
17  M. SHANNON, DANIEL T. MILLS,
   ANTHONI NGUYEN, OMAR PRADO, AND       Trial Date:      October 4, 2021
18  JORDAN SENG,
19         Defendants.
20
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................4

3

INTRODUCTION ...........................................................................10

STATEMENT OF FACTS .................................................................10

4

       1.    Plaintiff's General Allegations Regarding Sexual Harassment.....10

5

       2.    Allegations Concerning April 15, 2020 Issuance of RFD (Deputies Mills and Prado) ...........................................................11

6

       3.    Allegations Concerning April 16, 2020 Grievance.......................12

7

       4.    Allegations Concerning April 16, 2020 Assault (Deputies Seng and Nguyen and Lieutenants Martindale and Shannon)...............13

8

       5.    Plaintiff's May 7, 2020 Interview Regarding Complaint to Prisoner Legal Services.............................................................15

9

       6.    San Francisco Sheriff's Department Inmate Grievance Procedure16

10

ARGUMENT..................................................................................16

11

I.     SUMMARY JUDGMENT STANDARD.................................16

12

II.    PLAINTIFF'S EIGHTH AMENDMENT CLAIMS FAIL (First and Third Causes of Action)........................................................17

13

    A.    Plaintiff's Sexual Harassment Claim Fails ................................18

14

       1.    Deputy Mills Did Not Act with a Malicious or Sadistic State of Mind...................................................................................18

15

       2.    Plaintiff Suffered No Significant Harm .......................................20

16

       3.    Verbal Harassment is Insufficient to State an Eighth Amendment Violation..............................................................................22

17

18

    B.    Plaintiff's Due Process Claim Fails (Third Cause of Action-Defendants Tilton and Shannon.)............................................................24

19

III.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM AS TO DEPUTY MILLS, PRADO, NGUYEN, SHANNON, AND TILTON FAILS (Second Cause of Action) ...........................................................25

20

21

    A.    Legal Standard ........................................................................25

22

    B.    Plaintiff's First Amendment Claim Against Deputies Mills, Prado, Nguyen, Shannon, and Tilton Must Be Dismissed....................................26

23

    C.    There Is No Evidence Any Defendant Caused Plaintiff To Be Placed In Disciplinary Housing ................................................................27

24

25

    D.    Plaintiff's First Amendment Claim Against Defendant Seng Fails Because There Was a Legitimate Penological Goal For Placing Plaintiff In The Safety Cell ........................................................................28

26

27

IV.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ....................29

28

V.     PLAINTIFF'S CLAIMS ARE BARRED UNDER THE PLRA ..........................29

    A.     Plaintiff Failed to Properly Exhaust All Available Administrative
        Remedies..........................................................................................29

    B.     Plaintiff's Claim For Emotional Injury Is Barred ......................................31

VI.    PLAINTIFF'S BANE ACT CLAIM FAILS .........................................................31

VII.   PLAINTIFF'S *MONELL* CLAIM FAILS ............................................................32

CONCLUSION.................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970)............................................................................16

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)............................................................................17

*Austin v. Terhune*
  367 F.3d 1167 (9th Cir. 2004) ....................................................22, 23

*Barnett v. Centoni*
  31 F.3d 813 (9th Cir. 1994) ...............................................................28

*Bearchild v. Cobban*
  947 F.3d 1130 (9th Cir. 2020) .....................................................18, 20

*Blacher v. Johnson*
  517 F. App'x. 564 (9th Cir. 2013) .....................................................22

*Blueford v. Prunty*
  108 F.3d 251 (9th Cir. 1997) ...............................................19, 20, 29

*Board of County Comm'rs v. Brown*
  520 U.S. 397 (1997)............................................................................32

*Buckheit v. Dennis*
  2012 U.S. Dist. LEXIS 49062 (N.D. Cal. 2012) ...............................32

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)............................................................................17

*City of San Francisco v. Sheehan*
  135 S.Ct. 1765 (2015)........................................................................30

*Entler v. Gregoire*
  872 F.3d 1031 (9th Cir. 2017) ...........................................................26

*Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*
  515 F.3d 1019 (9th Cir. 2008) ...........................................................17

*Fortyune v. American Multi-Cinema, Inc.*
  364 F.3d 1075 (9th Cir. 2004) ...........................................................16

*Freecycle Sunnyvale v. Freecycle Network*
  626 F.3d 509 (9th Cir. 2010) .............................................................17

*Garcia v. Blahnik*
  2017 WL 1226863 (S.D. Cal. Feb. 3, 2017)................................27, 29

*Gibson v. United States*
781 F.2d 1334 (9th Cir. 1986) ..........................................................................26

*Grummett v. Rushen*
779 F.2d 491 (9th Cir.1985) ............................................................................21

*Hardage v. CBS Broad. Inc.*
427 F.3d 1177 (9th Cir. 2006) ..........................................................................17

*Harlow v. Fitzgerald*
457 U.S. 800 (1982)..........................................................................................29

*Hill v. Rowley*
658 F. Appx. 840 (9th Cir. 2016) ......................................................................23

*Holman v. Sauceda*
2019 WL 8108722 (C.D. Cal. Dec. 16, 2019) ..................................................27

*Hudson v. McMillian*
503 U.S. 1 (1992) ......................................................................................18, 24

*James River Ins. Co. v. Herbert Schenk, P.C.*
523 F.3d 915 (9th Cir. 2008) ............................................................................17

*James v. Rowlands*
606 F.3d 646 (9th Cir. 2010) ............................................................................29

*Jones v. N. Carolina Prisoners' Lab., Union, Inc.*
433 U.S. 119 (1977)..........................................................................................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)..........................................................................................17

*McCarthy v. Madigan*
503 U.S. 140 (1992)..........................................................................................30

*Minifield v. Butikofer*
298 F.Supp.2d 900 (N.D. Cal. 2004) ................................................................22

*Monell v. Dep't of Social Svcs.*
436 U.S. 658 (1978)..........................................................................................32

*Nigro v. Sears, Roebuck and Co.*
784 F.3d 495 (9th Cir. 2015) ............................................................................26

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*
210 F.3d 1099 (9th Cir. 2000) ..........................................................................17

*Oliver v. Keller*
289 F.3d 623 (9th Cir. 2002) ............................................................................31

*Pearson v. Callahan*
   555 U.S. 223 (2009)....................................................................................................29

*Perkins v. Classification Serv. Dep't*
   2019 WL 5268668 (S.D. Cal. Oct. 17, 2019) .........................................................27

*Porter v. Nussle*
   534 U.S. 516 (2002)..............................................................................................30, 31

*Pratt v. Rowland*
   65 F.3d 802 (9th Cir. 1995) ....................................................................................28

*Price v. Johnston*
   334 U.S. 266 (1948)................................................................................................25

*Reese v. County of Sacramento*
   888 F.3d 1030 (9th Cir. 2018) ................................................................................32

*Rhodes v. Robinson*
   408 F.3d 559 (9th Cir. 2005) ..................................................................................26

*Rideau v. Woodford*
   2009 WL 747715 (E.D. Cal. Mar. 20, 2009) .....................................................30, 31

*Rizzo v. Dawson*
   778 F.2d 527 (9th Cir. 1985) ..................................................................................28

*Sandin v. Conner*
   515 U.S. 472 (1995)............................................................................................24, 25

*Schwenk v. Hartford*
   204 F.3d 1187 (9th Cir. 2000) .......................................................................18, 22, 23

*Silva v. City of San Leandro*
   744 F. Supp.2d 1036 (N.D. Cal. 2010) ...................................................................32

*Somers v. Thurman*
   109 F.3d 614 (9th Cir. 1997) ..................................................................................21

*Soremekun v. Thrifty Payless, Inc.*
   509 F.3d 978 (9th Cir. 2007) ..................................................................................17

*Spruill v. Gillis*
   372 F.3d 218 (3d Cir. 2004) ...................................................................................30

*Thomas v. Ponder*
   611 F.3d 1144 (9th Cir. 2010) ................................................................................18

*United States v. Kapp*
   564 F.3d 1103 (9th Cir. 2009) ................................................................................17

*Watison v. Carter*
   668 F.3d 1108 (9th Cir. 2012) ...................................................................20

*Wolff v. McDonnell*
   418 U.S. 539 (1974)...................................................................................24

*Wood v. Beauclair*
   692 F.3d 1041 (9th Cir. 2012) ...................................................18, 23, 24

*Woodford v. Ngo*
   548 U.S. 81 (2006)..............................................................................30, 31

**Federal Statutes**
42 U.S.C. § 1983 ..............................................................................22, 30

42 U.S.C. § 1997e(a).............................................................................30

**Rules**
Federal Rules of Civil Procedure 56 ......................................................16

Federal Rules of Civil Procedure 56(e) ..................................................17

Defs' Notice of Motion and Motion for Summary
Judgment - Case No. 20-CV-3254-HSG
     7     n:\lit\li2020\210055\01535077.docx

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 17, 2021 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Haywood S. Gilliam, Jr., in the United States District Court for the Northern District of California, 1301 Clay Street, 4th Floor, Courtroom 2, Oakland, California, Defendants City and County of San Francisco, San Francisco Sheriff Deputies Nguyen, Seng, Mills, Prado, Chief Deputy Sheriff Tilton, and Lt. Sheriff Shannon ("Defendants") will move the Court for summary judgment under Federal Rule of Civil Procedure 56 on all claims for relief contained in the Complaint on the following grounds:

1. Even assuming Defendant Mills used lewd and sexually suggestive language with Plaintiff, this does not arise to the level of an Eighth Amendment violation.

2. None of the defendants responsible for Plaintiff's placement in the safety cell on April 16, 2020, were aware of the fact or the contents of Plaintiff's alleged grievance against Deputy Mills and Deputy Prado, and therefore they lacked a retaliatory motive. Moreover, Deputy Seng's report that Plaintiff had thrown an unidentified liquid at him created a legitimate penological interest in placing Plaintiff in the safety cell for his safety and the safety of others.

4. Plaintiff cannot establish liability under *Monell* because the defendants did not violate Plaintiff's constitutional rights, and, even assuming that they did, Plaintiff cannot identify any evidence of an unconstitutional policy that was the moving force behind the violations.

5. Even assuming that Plaintiff could survive summary judgment on his First and Eighth Amendment claims, the defendants are shielded by qualified immunity because there is no clearly established law that vulgar language and placement of a combative inmate in a safety cell is unconstitutional.

6. Plaintiff's claims for First Amendment retaliation are barred under the PRLA because Plaintiff failed to exhaust his administrative remedies as to those claims.

Defendants base their motion on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted, and such argument as may be heard.

Dated:  May 27, 2021

DENNIS J. HERRERA
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
SHEILA S. JOHNSON
Deputy City Attorneys

By: _/s/  Sheila S. Johnson_____
    SHEILA S. JOHNSON

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, SAN
FRANCISCO SHERIFF DEPUTIES NGUYEN, SENG,
MILLS, PRADO, CHIEF DEPUTY SHERIFF TILTON,
AND LT. SHERIFF SHANNON

**INTRODUCTION**

Plaintiff Cenious Brewster ("Plaintiff"), a long-term pre-trial inmate at San Francisco County Jail #5, was placed in a safety cell on April 16, 2020, after Sheriff's Deputy Jordan Seng ("Deputy Seng") had an unknown liquid substance thrown on him while walking past Plaintiff's cell. Plaintiff denies that he threw any liquid on Deputy Seng, but admits that Deputy Seng had to go and change his uniform after this "gassing." After Deputy Seng reported the "gassing," Lieutenant Martindale, who is not a named defendant in this lawsuit, ordered Plaintiff to be placed in the safety cell because "gassing" is a hazard to inmates and deputies in the jail. Lieutenant Martindale and the deputies who participated in Plaintiff's safety cell transfer were unaware that Plaintiff had submitted a grievance earlier that day claiming that Deputy Mills had sexually harassed him by making a series of taunting comments during a 20-second interaction while Deputy Mills was walking away from him in the jail. Plaintiff initiated this lawsuit before exhausting his administrative remedies. Plaintiff asserts five claims against the defendant Sheriff's deputies, arising from the alleged sexual harassment, grievance, and safety cell placement on April 15 and 16, 2020. Defendants are entitled to summary judgment on all Plaintiff's claims.

**STATEMENT OF FACTS**

Plaintiff filed his complaint while incarcerated in the San Francisco County Jail #5 on May 13, 2020. ECF No. 1. His claims concern conduct that occurred in April 2020, when he was housed on the second floor of Pod 2A.

**1.     Plaintiff's General Allegations Regarding Sexual Harassment**

Plaintiff testified that in April 2020, Deputy Mills made comments about Plaintiff's penis size and body parts, would refer to himself as "Daddy," and made him uncomfortable by watching Plaintiff in the shower. Johnson Decl. Ex. A ("Brewster Depo.")[1] at 16:21–25; 31:25; 32:1–5; 22:19–20; 23:5–8; 26:18–20; 23:5–8. At this time, Deputy Mills was assigned to Pod 2A and 2B at County Jail #5. One of his duties as a Pod deputy was to escort inmates in administrative segregation to and from the

---

[1] All exhibits referenced herein are attached to the Declaration of Sheila S. Johnson, unless noted otherwise.

showers. Ex. C ("Mills Depo.") at 39:19–40:25. Inmates in Pod 2A and 2B had to be handcuffed when escorted to and from the showers because they are higher risk for assault on staff. Mills Depo. at 40:21–25. Typically, Pod deputies in 2A and 2B would ask inmates at 7:00 a.m. at the start of their shift if they wanted a shower. Mills Depo. at 38:5–12. If the inmates said yes, then they would be placed on a list and one deputy would need to be with or near each inmate for their shower. Mills Depo. at 38:9–10; 39:5–9. The door to the shower is not transparent, and the inmate showering is not visible from outside. Mills Depo. at 38:22–39:3. Plaintiff testified: "I had a little problem myself. I don't like people looking at me for too long. I have been in different trauma incidents, so I have post-traumatic stress disorder." Brewster Depo. at 31:8–13. According to Plaintiff, when someone looks at him "too long," it, "Freaks [him] out, period. *Id.*

The only instance of physical contact with Deputy Mills that Plaintiff remembers as sexual was an occasion during which Deputy Mills "swipe[d]" Plaintiff's buttocks "a little bit" while tightening Plaintiff's handcuffs behind his back. Brewster Depo. at 33:7–11. Plaintiff admits that it is standard practice for deputies to handcuff inmates with their hands behind their backs. Brewster Depo. at 33:14–15.

### 2. Allegations Concerning April 15, 2020 Issuance of RFD (Deputies Mills and Prado)

On April 15, 2020, Plaintiff received a Request for Discipline ("RFD") for reasons unrelated to this lawsuit. San Francisco Sheriff's Office ("SFSO") Deputies Daniel Mills and Omar Prado delivered the RFD to Plaintiff in his cell between 1:00 and 2:00 p.m. Brewster Depo. at 57:18–58:5. Plaintiff asked why the deputies had to enter his cell and Deputies Mills and Prado debated with Plaintiff. Brewster Depo. at 59:7–10. After delivering the RFD, Deputy Prado descended the stairs to the lower-level of the pod and began organizing papers at a nearby podium. Video at 13:59:09. About one minute later, Deputy Mills descended the stairs and paused four times, raising his arms to shoulder-height and shaking his legs along the way. Video at 13:58:40–13:59:09. His gestures are captured on video surveillance from Pod 2A and did not last more than 20 seconds. Mills Depo 85:16– 87:20; Brewster Depo. at 67:4–24; Video at 13:58:40–13:59:09. Deputy Prado is visible in the video surveillance and appears in the lower right-hand corner of the screen at 13:58:22. Brewster Depo. at

77:12–78:78. Deputy Prado did not hear Deputy Mills say anything sexual or sexually-related to Plaintiff at any time during this interaction. Prado Decl. ¶ 2.

Plaintiff testified that during this interaction, Deputy Mills said something to the effect of, "This is my jail. I do what I want. And I'll make you suck my dick until my knees buckle" while laughing and pointing at Plaintiff. Brewster Depo. at 61:11–17. Plaintiff identified this occurrence in surveillance video from the jail. Ex. B ("Video") at 13:57:36 – 13:59:22. Plaintiff testified that Deputy Prado was laughing as Deputy Mills made this vulgar statement and that Deputy Prado appeared to be "entertained by the situation." Brewster Depo. at 72:1–12; 77:22–25. However, Plaintiff also testified that Deputy Prado was at the podium on the lower-level, shuffling papers, "minding his own business" as Deputy Mills made the comments. Brewster Depo. at 70:25–71:11; Video.

Plaintiff testified that, generally, Deputy Mills' comments were just "belittling" him, and that the April 15 fellatio remark made him feel "disrespected," "hurt," and "like he was nobody." Brewster Depo. at 63:20–64:6. Plaintiff also claims that he felt uncomfortable around Deputy Mills because "it made me uncomfortable to be around him because he's picking at me," and "It's very uncomfortable to be around somebody that[s] disrespectful" Brewster Depo. at 76:2–10. Fifteen to twenty minutes after his comments on the stairs, Deputy Mills walked by Plaintiff and Deputy Mills appeared to be laughing at Plaintiff. Brewster Depo. at 82:8–9. Deputies Jordan Seng, Anthoni Nguyen, Lieutenant James Shannon, and Captain Steven Tilton were not present for this event. Seng Decl. ¶ 2; Nguyen Decl. ¶ 2; Shannon Decl. ¶ 2.

### 3.    Allegations Concerning April 16, 2020 Grievance

Plaintiff claims that on April 16, 2020, he attempted to give Lieutenant James Shannon a grievance form describing the April 15, 2020 interaction with Deputies Mills and Prado as sexual harassment. Brewster Depo. at 82:24–83:14. Plaintiff testified that Lieutenant Shannon did not accept the grievance and told Plaintiff to give it to one of the deputies. Brewster Depo. at 83:1–7; 86:3–8. At about 3:00 p.m., at the beginning of the next shift, Plaintiff claims that he put that same grievance on the desk where Deputies Seng and Nguyen were standing and that he saw Deputy Seng place the

grievance behind the desk. Brewster Depo. at 83:19–24; 91:17–92:5. Plaintiff testified that he never received a signed copy of his grievance. Brewster Depo. at 93:1–18.

### 4. Allegations Concerning April 16, 2020 Assault (Deputies Seng and Nguyen and Lieutenants Martindale and Shannon)

On April 16, 2020 at about 9:50 p.m., Deputies Jordan Seng and Anthoni Nguyen were working the swing shift in Pod 2A. Ex. D ("Seng Depo.") at 40:6; 42:1–13. Deputy Seng had just brought another inmate back to his cell from a medical visit, which was next to Plaintiff's cell on the second floor of Pod 2A. Seng Depo. at 40: 9–16. It was nearing the end of Deputy Seng's shift and he attempted to close the open food port on Plaintiff's cell door, at which time, Plaintiff stuck his arm through the port and would not allow Deputy Seng to close the port. Seng Depo. at 40:9–16. When Deputy Seng turned around, an unknown liquid was thrown at Deputy Seng's back, seemingly through the open food port of Plaintiff's locked cell. Seng Depo. at 40:1–25. Deputy Seng immediately told Deputy Nguyen that Plaintiff had thrown liquid at him.[2] Seng Depo. at 42:1–13. Deputy Nguyen looked at Deputy Seng's uniform, observed that it was wet and had a residue on it, and then called for a supervisor on his department-issued radio. Nguyen Decl. ¶¶ 4–6. Shortly thereafter, Lieutenant Shannon arrived at Plaintiff's cell and observed that Deputy Seng's uniform was wet, and he directed him to go change into a dry uniform. Shannon Decl. ¶ 5; Seng Depo. at 42:14–25. Plaintiff denies having thrown any liquid on Deputy Seng on April 16, 2020. Brewster Depo. at 95:19–25. However, Plaintiff admits that Deputy Seng went to change his uniform after Plaintiff was placed in the safety cell. Brewster Depo. at 98:19–20.

Lieutenant Martindale was the assigned Watch Commander in Pod 2A on the night of April 16, 2020. Martindale Decl. ¶ 2. As Watch Commander, one of Lieutenant Martindale's duties was to review and approve placements of inmates in safety cells in accordance with SFSD Custody Operations Division ("COD") Policy number CODM 4.05. Martindale Decl. ¶¶ 3–4. When he arrived at Plaintiff's cell area, and Deputy Seng told him that Plaintiff had thrown an unknown liquid at him, Lieutenant Martindale determined that Plaintiff was physically combative and presented an imminent

---

[2] When an inmate throws any form of liquid at another person in the jail, it is commonly referred to as "gassing" by SFSD Deputies. Seng Depo. 38:23–25.

danger to others. Martindale Decl. ¶¶ 6–9. Based on Lieutenant Martindale's training and experience as a deputized staff of the county jail, he knew that inmates will sometimes throw urine, feces, or a combination of the two at jail staff or other inmates to cause them harm. Martindale Decl. ¶ 6. He also knew that sometimes inmates smuggle other potentially harmful substances into the jail and may attempt to use them to harm jail staff or other inmates. Martindale Decl. ¶ 6.

Based on the report of Plaintiff having thrown liquid at Deputy Seng, Lieutenant Martindale and Deputies Uyeda, Grimaldi, and Villar transferred Plaintiff to a safety cell at about 10:00 p.m. Brewster Depo. at 94:17–95:25; Martindale Decl. ¶ 10. Deputies Mills, Prado, and Captain Tilton were not present for Plaintiff's transfer to the safety cell. Mills Decl. ¶ 3; Prado Decl. ¶ 6; Tilton Decl. ¶ 2. Deputy Nguyen was present when Plaintiff was escorted out of his cell, however, he did not participate in transferring Plaintiff to the safety cell. Nguyen Decl. ¶ 6. The safety cell was not visible from Plaintiff's cell-area and was in a separate building. Nguyen Decl. ¶ 6. Deputy Seng was not present when Plaintiff was handcuffed or transferred to the safety cell because he was in the locker room changing into a dry uniform at that time. Seng Depo. at 60:23–25; Brewster Depo. at 98:6–20. Plaintiff identified Lieutenant Shannon as having participated in his placement in the safety cell. Brewster Depo. at 97:13-14. When Plaintiff was being placed in the safety cell, no deputy said anything about his sexual harassment allegation or grievance against Deputy Mills. *Id.* at 98:6–9. Deputy Seng did not request that Plaintiff be placed in the safety cell. Seng Depo. at 61:1–6. However, when Plaintiff was in the safety cell, Plaintiff testified that Deputy Seng walked by and said something to the effect of, "this is what I get for making up false allegations or false – I forgot the word he used." Brewster Depo. at 98:13–20.

Captain Tilton was also unaware of Plaintiff's grievance against Deputy Mills when he reviewed Plaintiff's safety cell placement after it occurred. Tilton Decl. ¶ 4. Captain Tilton approved the safety cell placement based on the information he had received that Plaintiff had thrown an unknown liquid at Deputy Seng, and for no other reason. *Id.* Deputy Seng had no interaction with Plaintiff after April 16, 2020, and therefore could not participate in any further disciplinary actions against Plaintiff after that date, including any disciplinary housing placements. Seng Depo. at 43:22–

24; 44:6–9. On June 10, 2020, Plaintiff was placed in disciplinary housing for 30 days. Brewster Depo. at 99:12–14. Although Plaintiff "received multiple 30-day lock-ups for various different things," Plaintiff testified that "one of them, the 30-day lockups I received was for false allegations." *Id.* at 99:23–25. Plaintiff speculated that he was given the 30-day lock-up, "Because I filed grievances with Deputy Mills." *Id.* at 100:12–3. The June 10 disciplinary placement was the placement closest in time to Plaintiff's grievance against Deputy Mills.

According to Plaintiff's medical records, a jail staff nurse visited Plaintiff at the safety cell that night, as part of a routine nursing encounter. The nurse observed Plaintiff, at 10:16 p.m., standing by the safety cell door "alert/ verbally responsive, [and appearing] comfortable." Abrego Decl., Ex. A at 001247. During another routine nursing encounter at 6:22 a.m. on April 17, 2020, another nurse notated that she observed Plaintiff in the safety cell in "[n]o acute distress; seen talking to peer in another safety cell," and wrote that he had "[n]o problems or complaints at [that] time." Abrego Decl., Ex. A at 001251. Plaintiff claims that his mouth was bleeding and his shoulder was hurt from being moved from his cell to the safety cell, though there is no physical evidence or medical records that corroborate his claim. Ex. E, Plaintiff's Resp. to CCSF Rog No. 4. There is no record of Plaintiff having submitted a grievance regarding his placement in the safety cell or retaliation for filing grievances by deputies on or after April 16, 2020. Mann Decl. ¶ 7.

### 5.    Plaintiff's May 7, 2020 Interview Regarding Complaint to Prisoner Legal Services

On May 6, 2020 at 4:27 p.m., Captain Tilton, a supervisor at County Jail #5, received an email from Nick Gregoratos of Prisoner Legal Services ("PLS"). Tilton Decl. ¶ 5. In the email, Mr. Gregoratos informed Captain Tilton that Plaintiff had complaints of sexual harassment by Deputies Mills, Prado, Nguyen, and Seng. Tilton Decl. ¶¶ 5–6. This was the first time that Captain Tilton learned that Plaintiff had complaints of sexual harassment against those deputies. Tilton Decl. ¶ 5. At 4:33 p.m., Captain Tilton forwarded the email to Lieutenant Shannon, and directed him to follow-up on the allegations. Tilton Decl. ¶ 7, Ex. A; Shannon Decl. ¶ 7, Ex. A.

On May 7, 2020, at 11:21 a.m., Lieutenant Shannon interviewed Plaintiff in the Pod 2A interview room about the allegations of sexual harassment against the four deputies referenced in the email. Shannon Decl. ¶ 8. During the interview, Lieutenant Shannon asked Plaintiff to write down his complaints regarding Deputies Seng, Mills, Prado and Nguyen in the form of a statement. Plaintiff agreed to do so and wrote a statement. Shannon Decl. ¶ 10. Plaintiff wrote that on April 15, between 2:00 p.m. and 2:20 p.m., he was "briefly taunted" by Deputy Prado and Deputy Mills, and that shortly thereafter Deputy Mills told him that he would "make [him] suck his d*** until [his] knee shake…". Shannon Decl., Ex. A at CCSF-BREWSTER_000014. Plaintiff's statement does not contain a claim of improper, or retaliatory safety-cell placement or anything regarding having submitted a grievance regarding the same. Nor did Plaintiff complain of having given a grievance form to Deputy Seng and not receiving it back. *See id*.

### 6.    San Francisco Sheriff's Department Inmate Grievance Procedure

The Sheriff's Department had in place in the year 2020 a written inmate grievance procedure titled Custody Division Policy and Procedure 7.19. This procedure outlines the administrative process the jail offered for grieving conditions of confinement or complaints against staff. Mann Decl. ¶ 4, Ex. A. A search by the custodian of records of grievances for Plaintiff from April 1, 2020 through May 26, 2021 has revealed the following: There is no record of a grievance being filed by Plaintiff regarding a retaliatory safety cell placement on April 16, 2020. Nor is there a record of a grievance being filed by Plaintiff regarding imposition of a retaliatory "lock-up" in June 2020. Mann Decl. ¶ 7.

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) . A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).

Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008); *Soremekun*, 509 F.3d at 984. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting a previous version of Fed. R. Civ. P. 56(e)). Further, a "motion for summary judgment may not be defeated … by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *Nissan Fire*, 210 F.3d at 1103.

## II.   PLAINTIFF'S EIGHTH AMENDMENT CLAIMS FAIL (First and Third Causes of Action)

Plaintiff alleges violations of his Eighth Amendment rights on two theories: 1) he was sexually harassed by Deputy Mills and 2) he was classified as high-restraint ("MR4") without due process. Plaintiff's claims fail under both theories.

## A. Plaintiff's Sexual Harassment Claim Fails

The Ninth Circuit has consistently placed prisoner sexual abuse claims within the same legal framework as excessive force claims. *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (citing *Wood v. Beauclair,* 692 F.3d 1041, 1051 (9th Cir. 2012) and *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). In *Hudson v. McMillian*, 503 U.S. 1, 4 (1992), the Supreme Court divided its inquiry of whether an inmate's excessive force allegations stated a viable Eighth Amendment claim into two components: (1) a "subjective" inquiry into whether prison staff acted "with a sufficiently culpable state of mind"; and (2) an "objective component" that asked whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (internal quotation marks omitted). The Ninth Circuit has held that a prisoner asserting an Eighth Amendment violation must "objectively show that he was deprived of something 'sufficiently serious*." Thomas v. Ponder,* 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). In evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Hudson*, 503 U.S. at 8. As to both prongs of this analysis, Plaintiff's claims fail.

### 1. Deputy Mills Did Not Act with a Malicious or Sadistic State of Mind

Plaintiff cannot show that Deputy Mills acted with a sufficiently culpable state of mind during any of the alleged sexually harassing acts. In *Whitley v. Albers,* 475 U.S. 312 (1986), the Supreme Court set parameters of the type of mind state a custodial officer would need to satisfy the subjective component. The Court said,

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…

*Id.* at 319.

As for the April 15 incident, the sequence of events is significant. First, Deputies Mills and Prado came to Brewster's cell to deliver an RFD, a document that formally notifies Plaintiff that he is facing imposition of discipline by the jail. The deputies had opened his cell door rather than slide the RFD through the food port of Plaintiff's cell and Plaintiff felt that they came into his room

unnecessarily and tried to provoke him into fighting with them. Brewster Depo. at 59: 6–25. According to Plaintiff, Mills was "talking hella shit to [him]" and "called him names." Brewster Depo. at 62:1–17; 60:6–12. Plaintiff asked Mills and Prado why they were "bothering" and "picking" on him. Brewster Depo. at 63:1–12. During the interaction, Plaintiff, Mills, and Prado went "back and forth into a debate or argument." Brewster Depo. at 61:7–10. Shortly thereafter, Deputy Mills walked down the stairs, away from Plaintiff and his cell, and allegedly said to Plaintiff, "This is my jail. I do what I want. I'll make you suck my dick until my knees shake." As Deputy Mills supposedly said this, he raised his arms to shoulder height and shook his legs somewhat comically four separate times as he walks down the stairs away from Plaintiff's cell.

Plaintiff later wrote in his statement on May 7, 2020, that he was "briefly taunted" by Deputies Mills and Prado just prior to the fellatio statement on the stairs. Plaintiff testified that fifteen to twenty minutes after the April 15 incident, Deputy Mills walked by Plaintiff's cell at which time Deputy Mills appeared to be laughing at Plaintiff. Brewster Depo. at 82:8-9. These facts do not demonstrate that Deputy Mills was acting with a vicious or sadistic intent.

The facts of the April 15 incident are strikingly similar to those in *Blueford v. Prunty* (9th Cir. 1997) 108 F.3d 251, 254, where the Court held that where the plaintiff suffered no physical contact, but merely endured "puerile and vulgar same-sex trash-talk" he failed to establish a violation of his Eighth Amendment rights. There, the custodial officer allegedly engaged in the following: "[He] would make strong sexual suggestions accompanied by demonstrative actions; would grab inmates and pull their hands toward his genitals; would grab his own genitals and refer to oral sex; would pull his own pants up tightly and 'demand' anal sex; and would feign martial arts strikes toward various parts of an inmate's body, including toward the groin area." *Id.* at 252–253. Plaintiff can only establish, at best, that the April 15 interaction was one of puerile and vulgar trash-talk, much like the one in *Blueford*, and accordingly is not sufficient to establish that the officer acted with a sufficiently culpable mind for an Eighth Amendment violation.

Nor does Plaintiff have any evidence that would support a finding of sexual assault which, if proved, raises a presumption of malicious and sadistic intent on the part of the perpetrator. *See*

*Bearchild,* 947 F.3d at 1144. In *Bearchild* the inmate alleged that the defendant prison guard conducted a pat-down search that lasted about five minutes during which the guard engaged in "rubbing, stroking, squeezing, and groping in [the inmate's] intimate areas." *Id.* at 1135. During the search, the guard ordered the inmate to pull his waistband away from his body, stared at his penis, and asked, "Is that all of you?" *Id.* That case involved significant and prolonged sexual groping of the inmate's intimate areas, as well as nonconsensual exposure of the inmate's genitals as he walked from his housing unit to a GED class. *Id.* at 1135. In this case, Deputy Mills did not expose any of his own body parts or those of Plaintiff. He did not touch plaintiff on April 15 when he made the fellatio remarks on the stairs and was not close to Plaintiff at the time of the remarks – indeed, he was walking away. The entire event did not last more than twenty seconds.

Thus, Plaintiff cannot show that Deputy Mills acted with a sadistic or malicious state of mind and this Court should grant judgment in Defendants' favor.

### 2. Plaintiff Suffered No Significant Harm

As to the objective component of the analysis, even when viewed most favorably to Plaintiff, Deputy Mills' conduct did not cause Plaintiff significant harm. Plaintiff testified that, generally, Deputy Mills' comments were just "belittling" him, and that the April 15th fellatio remark made him feel "disrespected," "hurt," and "like he was nobody." Brewster Depo. at 63:20–64:6. Plaintiff also claims that he felt uncomfortable around Deputy Mills, saying, "it made me uncomfortable to be around him because he's picking at me," and, "It's very uncomfortable to be around somebody that[s] disrespectful" Brewster Depo. at 76:2–10. Feeling belittled, disrespected, or having hurt feelings by a person in a position of authority is certainly unpleasant, however it is not the kind of harm that the courts have found to be cruel and unusual punishment. *See, e.g., Watison v. Carter*, 668 F.3d 1108 (9th Cir. 2012), 111 (finding humiliation does not rise to the level of severe psychological pain required to state an Eighth Amendment claim; *see also Somers v. Thurman,* 109 F.3d 614, 616 (9th Cir. 1997) (Eighth Amendment did not prohibit female guards from performing visual body cavity searches on male inmates or watching male inmates shower, despite one inmate's allegation that the guards pointed, joked, and "gawked " at him; *see also Grummett v. Rushen*, 779 F.2d 491, 494 n.1 (9th

Cir.1985) (prison's policy allowing female guards to observe male inmates disrobing, showering, using the toilet, and being strip-searched, and allowing them to conduct pat-down searches including the groin area, did not amount to "the type of shocking and barbarous treatment protected against by the [E]ighth [A]mendment").

With regard to Plaintiff's experience of Mills' "looking at him" in the shower, Plaintiff's alleged harm is implausible because the shower doors are not transparent and there is no way to see through them. Brewster Depo. at 38:18–39:3. However, assuming Deputy Mills did watch Plaintiff in the shower, Plaintiff's own testimony establishes that his discomfort was unique to Plaintiff and not objectively reasonable. "I had a little problem myself. I don't like people looking at me for too long. I have been in different trauma incidents, so I have post-traumatic stress disorder." Brewster Depo. at 31:8–13. Plaintiff testified that being looked at for "too long," "Freaks [him] out, period." *Id.* Even Plaintiff admits that objectively speaking, his experience of discomfort from Deputy Mills' alleged viewing of Plaintiff in the shower is particular to him and a symptom of his having experienced prior trauma in life. *Id.* This discomfort with a standard component of incarcerated life (being watched and surveilled), does not establish a significant harm.

Lastly, any harm suffered by Plaintiff by Deputy Mills' alleged conduct is largely based on his perception of Deputy Mills' sexual orientation. For example, Plaintiff testified: "I heard he had a boyfriend … I heard he bisexual." Brewster Depo. at 75:17–21. Plaintiff testified: "So I have multiple times said something to him. Like, 'don't you have a female? Would you like—because at the end of the day, I don't go that way. not to say that. I'm straight. you know what I mean? I like females. I'm not into males." Brewster Depo. at 49:5–23. Plaintiff's testimony reveals that his perception of Deputy Mills' sexual orientation made him feel as though his male heterosexuality was threatened or endangered. Plaintiff testified: "He was like trying to get me to be what [he is]." Plaintiff continued describing the feelings of discomfort with Deputy Mills: "He's going, coming at me, like, and I don't want him to go that way. I don't get down like that." Brewster Depo. at 76:3–5, 7–10. Plaintiff's testimony establishes that the harm he allegedly suffered was not objectively reasonable or significant, because it was based on Plaintiff's speculative fear that Deputy Mills would try to be sexual with

Plaintiff because Deputy Mills might be homo or bi-sexual, rather than factual indications that Deputy Mills presented a credible threat of sexual assault. Such unreasonable and speculative fear does not constitute a significant harm for the purpose of establishing an Eighth Amendment.

### 3.     Verbal Harassment is Insufficient to State an Eighth Amendment Violation

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the constitution." *Minifield v. Butikofer*, 298 F.Supp.2d 900, 904 (N.D. Cal. 2004) (citing *Schwenk*, 204 F.3d at 1198); *see also Blacher v. Johnson*, 517 F. App'x. 564 (9th Cir. 2013) (sexual harassment claim based on verbal harassment insufficient to state a claim under § 1983) (citation omitted). Furthermore, "[a]lthough prisoners have a right to be free from sexual abuse, …, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal citation omitted).

According to Plaintiff, much of the sexual harassment that he endured consisted of Deputy Mills praising the size of Plaintiff's penis, referring to himself as "Daddy," and on one occasion, proclaiming that he would make Plaintiff fellate him until his knees shook. *See generally* Brewster Depo. None of these statements were coupled with any physical touching or any exposure of either party's intimate body parts. When viewed most favorably for Plaintiff, the facts of this case are analogous to those in *Austin v. Terhune*. There, the court affirmed summary judgment for the defendant prison guard who had exposed his naked penis to the plaintiff inmate from an elevated glass-enclosed control booth. The defendant called the inmate a "punk bitch" and a "mother fucker," and told him that he would "come down out of this control booth and kick [his] ass." While still in the control booth, which had a large glass window, the defendant allegedly unzipped his pants, exposed his penis to the inmate, who was African American, and said "come suck this white dick, boy," while shaking his exposed penis at the inmate. The Ninth Circuit affirmed summary judgment for the defendant on his Eight Amendment claim noting that the incident was not sufficiently serious to meet the threshold required to establish an Eighth Amendment violation. The court reasoned that the

defendant never physically touched the prisoner, and that the single, isolated incident lasted for no more than 30–40 seconds. *Austin* , 367 F.3d 1167. Deputy Mills' alleged comments and gestures on April 15 are analogous, though less extreme. Like the defendant in *Austin*, Deputy Mills was not nearby when he made the fellatio remarks. Like the incident in *Austin*, this was isolated, of very short duration, lasting no more than 20 seconds, and did not involve any physical touching. While vulgar and offensive, the alleged statements and gestures made by Deputy Mills are not sufficiently serious to meet the threshold of an Eighth Amendment violation.

Plaintiff may argue that he has alleged facts sufficient to constitute a "sexual touching" by Deputy Mills and that the harassment therefore was more than verbal. The one physical contact with Mills that plaintiff characterizes as sexual occurred when Mills "swipe[d]" plaintiff's buttocks "a little bit" while handcuffing him behind his back. Plaintiff admits that it is standard for deputies to handcuff inmates from behind. This physical contact falls woefully short of the type of contact that courts find sufficient to state a claim for sexual abuse under the Eighth Amendment. For example, in *Schwenk,* the court affirmed denial of summary judgment on an Eighth Amendment claim where the deputy repeatedly bribed and threatened plaintiff for oral sex; exposed his penis to her; forcibly groped her buttocks; pushed her against the bars of her cell; and rubbed his exposed penis against her buttocks as she struggled to get away. *Schwenk*, 204 F.3d at 1194; *see also Hill v. Rowley*, 658 F. Appx. 840, 841 (9th Cir. 2016) (finding allegations of deliberate, unwanted touching sufficient to state a claim for sexual harassment that violates the Eighth Amendment), *and Wood,* 692 F.3d at 1046-51 (reversing summary judgment on behalf of defendant and finding sufficient physical contact to state Eighth Amendment claim where defendant forcibly reached inside plaintiff's pants, stroked his penis, and said "you know you want it.") Unlike the foregoing cases, the "swipe" described by Plaintiff was not forceful, forcible, deliberate, or plausibly sexually gratifying. No skin-to-skin contact was made, no intimate body parts were exposed, and no prolonged groping, rubbing, or other sexually stimulating movements were involved. Indeed, it occurred "a little bit" and was incidental to Deputy Mills' hand-cuffing of plaintiff in the standard manner—behind the back. Despite all of the sexually charged

statements Deputy Mills allegedly made, no such statement accompanied this one instance of physical contact.

In sum, as to his sexual harassment claims, they fall woefully short of the establishing any viable claim of sexual abuse under the Eighth Amendment. At its core, the Eighth Amendment forbids conduct that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Wood,* 692 F.3d at 1050–1051. When examined from this vantage point, each of the instances that Plaintiff alleges do not amount to sexual abuse under the Eighth Amendment.

## B. Plaintiff's Due Process Claim Fails (Third Cause of Action-Defendants Tilton and Shannon.)

Plaintiff claims that his due process rights under the Eighth Amendment were violated by Defendants Tilton and Shannon because they wrongfully categorized him as "MR4." Plaintiff describes MR4 as "the most restrictive categorization [that] requires prisoners to be shackled around their waist and feet and handcuffed at most times." TAC ¶ 29. Plaintiff claims he had never shown aggression and/or been violent towards a deputy and/or other jail staff. TAC ¶ 21. This theory fails for two reasons: 1) the restraint categorization does not constitute a sufficient deprivation to implicate due process rights, and 2) the categorization effectuates legitimate penological goals.

Assuming *arguendo*, that Plaintiff was categorized as MR4 and placed in administrative segregation as punishment, his claim fails because such punishment falls within the expected perimeters of his lawful confinement in the custody of the Sheriff. *See Sandin v. Conner* (1995) 515 U.S. 472; *Wolff v. McDonnell* (1974) 418 U.S. 539, 558; *see also Jones v. N. Carolina Prisoners' Lab., Union, Inc.*, 433 U.S. 119, 125 (1977) (" [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). In *Sandin*, the Supreme Court held that where a prisoner's discipline in segregated confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction, it therefore did not implicate due process rights. Plaintiff's allegations that he was required to be shackled around the waist and feet and handcuffed at most times, like administrative segregation in *Sandin*, does not indicate that the degree or duration of restriction exceeded Plaintiff's sentence or imposed atypical and

significant hardship in relation to the ordinary incidents of prison life. Plaintiff has no due process rights for his categorization as "MR4." Furthermore, the SFSO has a legitimate purpose for the restraint classifications and special housing designations that outweighs Plaintiff's interest in not being handcuffed and shackled as frequently.

## III. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM AS TO DEPUTY MILLS, PRADO, NGUYEN, SHANNON, AND TILTON FAILS (Second Cause of Action)

Plaintiff brings a First Amendment retaliation claim against Deputies Mills, Prado, Nguyen, Shannon, Seng, and Tilton. Plaintiff alleges that he engaged in First Amendment protected activity when he "submitted grievances for sexual harassment, misuse of the safety cell, and retaliation," and when he filed his federal lawsuit. TAC ¶ 45. Plaintiff further alleges that Deputies Mills, Nguyen, Prado, Shannon, and Seng retaliated against him for submitting his grievances when they "imposed and carried out discipline against" Plaintiff. TAC ¶ 46. Plaintiff's only claim against defendant Tilton is that he "approved the disciplinary action against" Plaintiff and "failed to meaningfully investigate his grievances." TAC ¶ 47.

### A. Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "A plaintiff 'may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Id.* at 464 (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). In evaluating whether there are facts sufficient to allow Plaintiff to proceed on his First Amendment retaliation claim, this Court is not required to credit Plaintiff's speculative and self-serving statements about facts that are beyond his personal knowledge. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015).

The placement of Plaintiff in the safety cell and in disciplinary housing are adverse actions under federal law, and "[t]he filing of a grievance/complaint whether it be verbal or written, formal or informal is protected conduct." *Entler v. Gregoire*, 872 F.3d 1031, 1044 (9th Cir. 2017). However, the undisputed facts show that Plaintiff cannot establish the second or fifth elements of his First Amendment retaliation claim. First, Plaintiff cannot show that he was placed in the safety cell or in disciplinary housing because of his grievance. Second, he cannot show that his placement in the safety cell or in disciplinary housing did not reasonably advance a legitimate penological goal. Each of these elements is addressed in turn below.

As to all but Deputy Seng, Plaintiff lacks any facts that the deputies either knew about his grievance or that they participated in the allegedly retaliatory conduct. And even as to Deputy Seng, Plaintiff has no evidence that Deputy Seng had any interactions with him after April 16, 2020, and thus there is no evidence that Deputy Seng was involved in Plaintiff's placement in disciplinary housing.

**B.    Plaintiff's First Amendment Claim Against Deputies Mills, Prado, Nguyen, Shannon, and Tilton Must Be Dismissed**

As against Defendants Mills, Prado, Nguyen, Shannon, and Tilton, Plaintiff's First Amendment retaliation claim fails. As a matter of undisputed fact, Deputies Mills and Prado and Captain Tilton were not present for and did not have any role in Plaintiff's safety cell placement or in his disciplinary housing. Therefore, there is no evidence that they engaged in any retaliatory conduct against Plaintiff. Even if Plaintiff had any evidence that any of these defendants participated in Plaintiff's safety cell placement, Plaintiff lacks any evidence that Deputies Mills, Prado, Nguyen, Shannon, or Captain Tilton knew that Plaintiff had filed a grievance on April 16 before being transferred into the safety cell. *See Perkins v. Classification Serv. Dep't,* No. 3:19-cv-01382-JLS-MDD, 2019 WL 5268668, at *5 (S.D. Cal. Oct. 17, 2019) (dismissing retaliation claim where "Plaintiff offers no factual allegations as to how Defendants … were aware that he had filed any grievances or complaints when they denied his request for a transfer."). The undisputed facts are that none of these deputies were aware of Plaintiff's alleged First Amendment protected activity. Plaintiff admits that Lieutenant Shannon refused to take his grievance and therefore, Plaintiff lacks any

evidence that Lieutenant Shannon was aware of its contents. Therefore, no reasonable jury could conclude that they took any action against Plaintiff in retaliation for submitting a grievance against Deputy Mills. *See Garcia v. Blahnik*, No. 14cv875-LAB-BGS, 2017 WL 1226863, at *11 (S.D. Cal. Feb. 3, 2017), *report and recommendation adopted as modified*, 2017 WL 1161225 (S.D. Cal. Mar. 29, 2017), *aff'd*, 739 F. App'x 451 (9th Cir. 2018) (Plaintiff must demonstrate "defendant's knowledge of plaintiff's protected conduct."). Plaintiff's First Amendment retaliation claim against all five defendants must be dismissed.

Plaintiff's claims against these defendants is similar to those that were dismissed in *Holman v. Sauceda,* 5:18-CV-00502-DOC (MAA), 2019 WL 8108722, at *8 (C.D. Cal. Dec. 16, 2019), *report and recommendation adopted,* 2020 WL 2951123 (C.D. Cal. Jan. 23, 2020). In *Holman*, an inmate alleged that a sergeant issued a disciplinary write-up in retaliation for filing and assisting inmates with filing grievances against prison staff. He alleged that two days after the issuance, the sergeant "said, 'this is what you get for helping inmates push paperwork,'" and that "'Ive [sic] put the workin [sic], Im [sic] coming for you.'" *Id.* at *2. The inmate also alleged that seven other correctional officers also took various retaliatory acts against him for various alleged protected acts. The district court found that the inmate had sufficiently alleged a retaliation claim against the sergeant because "[r]etaliatory intent is alleged by [the sergeant]'s statements." *Id.* at *7. In contrast, the district court found that the inmate failed to state a retaliation claim against the other seven correctional officers because "[t]he only allegations that vaguely suggest retaliation are temporal proximity." *Id*. at *8. Here, Plaintiff similarly lacks evidence that the "exercise of his First Amendment rights was a substantial or motivating factor behind" Defendants Prado, Mills, Nguyen, Shannon, and Tilton's conduct. *Id.*

### C.   There Is No Evidence Any Defendant Caused Plaintiff To Be Placed In Disciplinary Housing

To the extent that Plaintiff alleges that he was placed in disciplinary housing at some point after he submitted his grievance on April 16 in retaliation for submitting the grievance, it is undisputed that it was Lieutenant Martindale who made the determination to take that adverse action against Plaintiff. Lieutenant Martindale did so for a legitimate penological interest unrelated to the alleged gassing incident or Plaintiff's grievance against Deputy Mills. Plaintiff has no evidence that any of the

named defendants caused him to be placed in disciplinary housing, and therefore his First Amendment claim against them based on this action must be dismissed.

### D.   Plaintiff's First Amendment Claim Against Defendant Seng Fails Because There Was a Legitimate Penological Goal For Placing Plaintiff In The Safety Cell

With regard to Deputy Seng, Plaintiff's First Amendment claim fails because he cannot dispute that Deputy Seng had liquid thrown on him and reasonably believed he had been "gassed" by Plaintiff. Indeed, Plaintiff admits that Deputy Seng went to change his uniform after Plaintiff was placed in the safety cell. Brewster Depo. at 98:19–20. Taking the facts in the light most favorable to Plaintiff, and assuming that he did not throw liquid on Deputy Seng, Deputy Seng's reasonable belief that Plaintiff had "gassed him" provided a legitimate penological purpose for Plaintiff's subsequent safety cell placement. As Deputy Seng testified, gassing is a "safety hazard." Seng Depo. at 59:1–2.

The Ninth Circuit has held that preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). When considering this final factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 482). Plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals" for Defendants' challenged conduct. *Id.* at 806; *Garcia*, 2017 WL 1226863, at *11.

Here, there was a clear legitimate penological goal in placing Plaintiff in the safety cell after Deputy Seng reported that Plaintiff had "gassed him," i.e., thrown an unidentified liquid on him. As Lieutenant Martindale attests, he ordered that Plaintiff be placed in the safety cell after hearing Deputy Seng's report and observing the liquid on his uniform. Taking the facts in the light most favorable to Plaintiff and even assuming that Deputy Seng was not gassed by Plaintiff, Lieutenant Martindale took the adverse action for one purpose and one purpose only – for the safety of Plaintiff and others.

## IV.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court identified two inquiries in determining qualified immunity: (1) whether the defendant violated a constitutional right, and (2) whether it would be clear to a reasonable officer that the right was clearly established. The Court subsequently held in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) that courts may grant qualified immunity on the basis of the "clearly established" prong alone, without first determining whether any right had been violated. *Pearson* also reaffirms that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id*. at 231. Accordingly, a Court may grant qualified immunity if either "the facts plaintiff alleges do not make out a violation of a constitutional right, or if the right at issue was not clearly established at the time of defendant's alleged misconduct." *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 235).

Defendants did not violate Plaintiff's constitutional rights, even if they had, Plaintiff cannot show a clear rule that it was unconstitutional for Deputy Mills to mock, belittle, or even verbally harass Plaintiff. *See Blueford*, 108 F.3d 251 (holding that an inmate's right not to be subject to sexually-based diatribes, was not clearly established under federal law at time of incident and, official was qualifiedly immune). Likewise, all the defendants are entitled to qualified immunity on the First Amendment claim because Plaintiff's placement in a safety cell after he reportedly threw an unknown liquid on Deputy Seng did not violate clearly established law. *See City of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015).

## V.     PLAINTIFF'S CLAIMS ARE BARRED UNDER THE PLRA

### A.     Plaintiff Failed to Properly Exhaust All Available Administrative Remedies

The Prison Litigation Reform Act (the "PLRA") requires that inmates filing causes of action challenging prison conditions under 42 U.S.C. section 1983, or other federal law, must first exhaust

all available administrative remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 … by a prisoner … until such administrative remedies as are available are exhausted."). The exhaustion requirement is "mandatory" and not left to the discretion of district courts. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Woodford v. Ngo,* 548 U.S. 81, 85 (2006). "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524. That is, "[a]ll steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him." *Rideau v. Woodford*, No. CIV S-05-1709 FCD KJM P, 2009 WL 747715, at *1 (E.D. Cal. Mar. 20, 2009), *report and recommendation adopted,* 2009 WL 1107673 (E.D. Cal. Apr. 23, 2009), *aff'd*, 399 F. App'x 258 (9th Cir. 2010) (dismissing Eighth Amendment claim because prisoner failed to complete the grievance process).

The purposes of the exhaustion requirement are to: 1) return control of the inmate grievance process to prison administrators; 2) encourage development of an administrative record, and perhaps settlements within the inmate grievance process; and (3) reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. *Porter*, 534 U.S. at 524–525, 528; *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004).

Plaintiff's constitutional claims are based wholly or in part on his placement in a safety cell on April 16th and other vague retaliatory actions. Plaintiff claims that he gave a grievance form describing the harassment he suffered at the hands of Deputies Prado and Seng on April 15, 2021. However, there is no evidence that he sought to submit a grievance regarding his safety cell placement on April 16, 2020 or any other allegations of retaliatory actions by Deputies Nguyen, Seng, Lieutenant Shannon, or Captain Tilton prior to filing his lawsuit on May 15, 2020. Furthermore, Plaintiff did not complain of the alleged retaliation in his May 7, 2020 statement to Lieutenant Shannon. By circumventing the grievance process, Plaintiff failed to use "all available" remedies, failed to complete "all steps" in the administrative process, and unfairly deprived the SFSO of its opportunity to address the grievance. *Porter*, 534 U.S. at 524; *Rideau*, 2009 U.S. Dist. LEXIS 22625, at *2; *Woodford*, 548 U.S. at 95. Accordingly, to the extent that Plaintiff bases his

constitutional claims on retaliatory safety-cell placement, or any other subsequent retaliation, summary judgment should be granted for Defendants. *Porter*, 534 U.S. at 524, 532.

### B.   PLAINTIFF'S CLAIM FOR EMOTIONAL INJURY IS BARRED

Plaintiff claims to have suffered emotional and mental damages for the alleged conduct underlying each of his federal causes of action. ECF No. 33 ¶ 39. He seeks past, present, and future economic damages for emotional distress. ECF No. 33 ¶ 65(a), (b). Under the PLRA, a prisoner cannot bring a claim for emotional injury without a showing of physical injury or a sexual act. *See* 42 U.S.C.A. § 1997e (no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a "sexual act" (as defined in section 2246 of Title 18)). "Sexual act" is defined in Title 18 to mean contact between the genitals and/or mouth, or contact involving sexual penetration. 18 U.S.C.A. § 2246. Plaintiff's claim for emotional injuries fails because there was no contact between him and Deputy Mills at all, other than the minimal touching involved with his handcuffing. Nor can Plaintiff satisfy the physical injury requirement under the PRLA, which "need not be significant but must be more than *de minimis*." *See Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002)  Two jail nurses observed and reported that Plaintiff was "alert" and had no complaints when he was in the safety cell. The only evidence of physical injury comes from Plaintiffs' response to Defendants' interrogatories in which he claims that he was bleeding from the mouth and suffered shoulder pain as a result of the safety cell placement. There is no corroboration for Plaintiff's claim of injury, but even assuming these afflictions were present, this injury is not more than *de minimis. See Oliver*, 289 F.3d at 629 (back and leg pain were *de minimis*). For all of these reasons, the Court should grant summary judgment in defendants' favor.

## VI.   PLAINTIFF'S BANE ACT CLAIM FAILS

The elements of a Section 52.1 claim, known as the Bane Act, are as follows: 1) threat, intimidation or coercion; 2) a constitutional violation; and a 3) specific intent to violate that constitutional right. *Reese v. County of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018). Plaintiff

lacks evidence to establish any of the elements, and so Defendants are entitled to summary judgment on Plaintiff's fifth cause of action under the Bane Act.

## VII.   PLAINTIFF'S *MONELL* CLAIM FAILS

Plaintiff seeks to impose direct liability on the City for the alleged unconstitutional conduct of its employees, namely, Deputies Mills, Prado, Nguyen, and Seng, Lieutenant Shannon, and Chief Deputy Tilton. TAC (Doc. No. 33) ¶¶ 5-13. However, under Section 1983 a municipality cannot be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 691 (1978); *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (hereafter, "*Brown*"). Instead, because liability under Section 1983 must rest on actions of the municipality – and not the actions of its employees – a plaintiff must prove that the alleged constitutional deprivation was the product of an official policy or custom of the municipality. *Monell*, 436 U.S. at 690-691; *Brown*, 520 U.S. at 403. Here, Plaintiff cannot show that an official policy or permanent custom caused the allegedly unconstitutional conduct by the individual defendants. *Monell* liability cannot be imposed. District courts routinely grant summary judgment against plaintiffs and dismiss their *Monell* claims for failing to demonstrate that the alleged deprivation was caused by a municipal policy or custom. *See*, *e.g. Buckheit v. Dennis*, 2012 U.S. Dist. LEXIS 49062, at **72-73 (N.D. Cal. 2012), and  *Silva v. City of San Leandro*, 744 F. Supp.2d 1036, 1049 (N.D. Cal. 2010). The same result should follow here.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion for summary judgment.

Dated:  May 27, 2021

DENNIS J. HERRERA
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
SHEILA S. JOHNSON
Deputy City Attorneys

By: _/s/  SHEILA S. JOHNSON_____
SHEILA S. JOHNSON

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, SAN
FRANCISCO SHERIFF DEPUTIES NGUYEN, SENG,
MILLS, PRADO, CHIEF DEPUTY SHERIFF TILTON,
AND LT. SHERIFF SHANNON