DAN SIEGEL, SBN 56400
EMILYROSE JOHNS, SBN 294319
ANDREW CHAN KIM, SBN 315331
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com;
emilyrose@siegelyee.com;
chankim@siegelyee.com

Attorneys for Plaintiff
CENIOUS BREWSTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENIOUS BREWSTER, | Case No.: 4:20-cv-03254-HSG |
| Plaintiff, | **OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | Date: July 15, 2021 |
| CITY AND COUNTY OF SAN FRANCISCO, STEPHEN TILTON, JAMES M. SHANNON, DANIEL T. MILLS, DANNY NGUYEN, MIGUEL PRADO, and JORDAN SENG, | Time: 2:00 p.m. |
| | Courtroom: 2, 4th Floor |
| | Trial Date: October 4, 2021 |
| Defendants. | Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................... 2

    1.   Deputy Mill's Campaign of Sexual Harassment.......................................... 2

    2.   April 15, 2020 Incident................................................................................. 4

    3.   April 16, 2020 Incident and Safety Cell Placement .....................................5

    4.   Retaliation..................................................................................................... 6

    5.   Grievances.....................................................................................................7

III.  ARGUMENT ......................................................................................................... 8

    1.   Legal Standard .............................................................................................. 8

    2.   Deputy Mills' Unwanted Sexual Comments, Conduct, and Contact Served No
       Legitimate Penological Purpose .................................................................. 9

    3.   Mr. Brewster Demonstrated that Deputy Mills' Sexual Harassment was Egregious,
       Pervasive and/or Widespread ....................................................................10

    4.   Classifying and Keeping Mr. Brewster on MR4 Status Without Meaningful
       Review Violated his Due Process Rights ....................................................12

    5.   Mr. Brewster was Retaliated Against for Submitting Grievances ...................................13

    6.   It was Clearly Established that Egregious, Pervasive and/or Widespread Sexual
       Harassment and Retaliation Violates the Constitution ....................................14

    7.   Mr. Brewster Exhausted all Administrative Remedies Available to Him Regarding
       the Safety Cell Placement and Retaliation ........................................................16

    8.   Prisoners Are Entitled to Recover Compensatory, Nominal, or Punitive Damages .......17

    9.   Defendants Violated Mr. Brewster's Federal and State Rights by Threats,
       Intimidation and Coercion ..........................................................................18

IV.   CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ahmed v. Ringer*, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855, at *4
(E.D. Cal. Feb. 5, 2015) ................................................................................... 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 8

*Andres v. Marshall*, 867 F.3d 1076 (9th Cir. 2017) .................................................. 16

*Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004) ..............................................10, 11

*Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir. 1983) ......................................... 8

*Barrett v. Ciolli*, No. 120CV01802NONEEPGPC, 2021 WL 1752043, at *7
(E.D. Cal. May 4, 2021) ................................................................................... 12

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) .............................................. 9

*Blacher v. Johnson*, 517 F. App'x 564 (9th Cir. 2013) .........................................10, 11

*Blueford v. Prunty*, 108 F.3d 251 (9th Cir. 1997) ................................................... 15

*Boyce v. Fox*, No. 214CV1743KJMKJNP, 2018 WL 3031528, at *8
(E.D. Cal. June 15, 2018) ................................................................................. 17

*Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) .............................................. 15

*City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) ..................... 15

*Colvin v. Sanchez*, No. 14-cv-05400-LB, 2020 WL 1450555, at *7
(N.D. Cal. Mar. 25, 2020) ................................................................................. 18

*Espinosa v. City & Cty. of S.F.*, 598 F.3d 528 (9th Cir. 2010) ................................. 14

*Garlick v. County of Kern*, 167 F. Supp. 3d 1117 (E.D. Cal. 2016) ......................... 18

*Giron v. Corr. Corp. of Am.*, 191 F.3d 1281 (10th Cir. 1999) .................................. 9

*Glenn v. Washington Cty.*, 673 F.3d 864 (9th Cir. 2011) ........................................ 8

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ................................... 9

*Green v. Thompson*, No. C 10-5721 WHA PR, 2012 WL 761697, at *5

(N.D. Cal. Mar. 7, 2012) ...................................................................................18

*Hewitt v. Helms*, 459 U.S. 460 (1983)...........................................................12

*Hill v. Rowley*, 658 F. App'x 840 (9th Cir. 2016)...........................................11

*Hudson v. McMillian*, 503 U.S. 1 (1992) ........................................................9

*Jones v. Darden*, 2016 WL 4585765 at *2 (N.D. Cal. 2016)...................... 11, 12, 15

*Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993).........................................15

*Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996)..................................................12

*McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015) ............................................17

*Minifield v. Butikofer*, 298 F.Supp.2d 900 (N.D. Cal. 2004) .........................10

*Monclova-Chavez v. McEachern*, No. 1:08-CV-00076-AWI, 2011 WL 39118, at *6
   (E.D. Cal. Jan. 5, 2011) ..............................................................................18

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
   210 F.3d 1099, (9th Cir. 2000)......................................................................8

*Newman v. Cty. of Ventura*, No. CV 09-4160-JVS (RC), 2010 WL 1266719, at *7
   (C.D. Cal. Mar. 8, 2010)...............................................................................13

*Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002) ...............................................17

*Pearson v. Callahan*, 555 U.S. 223 (2009)....................................................14

*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) ......................................... 13, 15

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) .................... 18, 19

*Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010) ................................. 13, 15

*Ross v. Blake*, 136 S. Ct. 1850 (2016).............................................................16

*Sandin v. Conner*, 515 U.S. 472 (1995) ..........................................................12

*Sapp v. Kimbrell,* 623 F.3d 813 (9th Cir. 2010) .............................................17

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................14

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) ...........................9, 11, 15

*Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997) ............................................................. 11

*Thomas v. District of Columbia*, 887 F. Supp. 1 (D.D.C. 1995) ........................................ 9

*T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n.*,
    809 F.2d 626 (1987) ....................................................................................................... 8

*Washington v. Stark*, No. 118CV00564LJOSABPC, 2019 WL 343133, at *1
    (E.D. Cal. Jan. 28, 2019) ............................................................................................ 16

*Watson v. Jones*, 980 F.2d 1165 (8th Cir. 1992) ............................................................. 15

*West v. Dizon*, No. 2:12-cv-1293 MCE DAD P, 2014 WL 794335, at *5
    (E.D. Cal. Feb. 27, 2014) ............................................................................................ 14

*Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012) .................................................. 9, 10, 11

**State Cases**

*Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766,
    225 Cal.Rptr.3d 356 (2017) ......................................................................................... 18

**Federal Statutes and Rules**

42 U.S.C. § 1997e(a) ........................................................................................................ 16

Fed. Rules Civ. Proc., Rule 56(c) ....................................................................................... 8

**California Statutes**

California Civil Code § 52.1 ............................................................................................ 18

California Civil Code § 52.1(a) ......................................................................................... 18

**Other Authorities**

Brenda V. Smith, *Sexual Abuse of Women in United States Prisons: A Modern Corollary of Slavery*, 33 Fordham Urb. L.J. 571 (2006) ...................................................................... 10

# I.    INTRODUCTION

In April 2020, Mr. Cenious Brewster and other young men of color submitted grievances to the City and County of San Francisco ("CCSF") alleging that Deputy Daniel Mills sexually harassed them. CCSF did not take their grievances seriously and did not investigate the allegations as required by the Prison Rape Elimination Act. Rather, CCSF subjected Mr. Brewster to retaliation by wrongfully placing him in a safety cell and categorizing him as Mandatory Restraint Level 4 ("MR4"). On February 22, 2021, the IAU concluded that the matter was not sustained and that the investigation could not prove or disprove Mr. Brewster's allegations by a preponderance of the evidence.

In their motion for summary judgment, defendants argue that:

1) Mr. Brewster's sexual harassment claim fails because Deputy Mills did not act with a malicious or sadistic state of mind, Mr. Brewster did not suffer significant harm, and that verbal harassment is insufficient to state an Eight Amendment violation;

2) Mr. Brewster's due process claim fails because his MR4 status does not constitute a sufficient deprivation to implicate due process rights and because the MR4 categorization effectuates legitimate penological goals;

3) Mr. Brewster's First Amendment Retaliation claim fails because none of the defendants were involved in the safety cell placement and there was a legitimate penological goal for the placement;

4) Defendants are entitled to qualified immunity because it is not clearly established that verbal sexual harassment violates the Constitution and that Mr. Brewster's safety cell placement did not violate the Constitution;

5) Mr. Brewster's claims are barred under the PLRA because he failed to properly exhaust all available administrative remedies and that the PLRA does not permit a prisoner to bring a claim for emotional injury without showing a physical injury or a sexual act;

6) Mr. Brewster failed to establish his Bane Act claim; and

7) Mr. Brewster failed to establish his *Monell* claim.

In his opposition, Mr. Brewster will show that:

1)   Deputy Mills' sexual harassment served no legitimate penological purpose and that Deputy Mills' sexual harassment was egregious, pervasive and/or widespread;

2)   Classifying Mr. Brewster as MR4 without notice or review violated his due process rights;

3)   Genuine issues of material fact preclude summary judgment on Mr. Brewster's retaliation claim;

4)   It is clearly established that sexual harassment and retaliation violate the Constitution;

5)   Mr. Brewster is excused from exhausting his administrative remedies and that the PLRA does not preclude Mr. Brewster from mental and emotional damages; and

6)   Mr. Brewster's rights were violated through threats, intimidation, or coercion.

Mr. Brewster concedes his *Monell* claim.

## II.   STATEMENT OF FACTS

Mr. Brewster brought this lawsuit while he was incarcerated at San Francisco County Jail ("CJ") 3, formally known as CJ5, for incidents that occurred in April 2020. Mr. Brewster is no longer incarcerated.

On January 26, 2020, Mr. Brewster was arrested and incarcerated at CJ3 in San Bruno, California for a probation violation. (Deposition of Cenious Brewster ("Brewster Depo."), 8:11-18, 11:24-12:2, attached as Exhibit A to the Declaration of Andrew Chan Kim in Opposition to Motion for Summary Judgment ("Kim Dec."), ¶ 2). Deputy Mills and Mr. Brewster knew each other and had previous interactions from Mr. Brewster's prior incarceration in 2019. (Brewster Depo., 12:16-17:18, 15:12-16, Kim Dec., ¶ 2, Ex. A). During this prior incarceration, Deputy Mills abused his power and violated the deputy code of conduct by making comments, joking, teasing, and disrespecting Mr. Brewster, including telling him that he "ran stuff" at the jail. (*Id.*; 14:16-11).

### 1.   Deputy Mill's Campaign of Sexual Harassment

In April 2020, Deputy Mills worked the day shift between 7:00 a.m. to 3:00 p.m. and was assigned to Pod 2A and 2B, where Mr. Brewster was housed. (Deposition of Daniel Mills ("Mills Depo.") attached as Exhibit B to the Kim Dec, ¶ 3), 32:2-33:3; Brewster Depo., 56:21-23, Kim Dec., ¶ 2, Ex. A).

Beginning in the first week of April, Deputy Mills started taking Mr. Brewster to the shower daily, and more frequently than usual. (Brewster Depo., 17:11-25, 27:2-28:2, Kim Dec., ¶ 2, Ex. A). When Mr. Brewster requested to take a shower at a different time, Deputy Mills responded that he had to shower now or forfeit his shower. (Brewster Depo., 25:24-28:2, Kim Dec., ¶ 2, Ex. A). On one occasion, Deputy Mills made Mr. Brewster shower despite Mr. Brewster not wanting to. (Brewster Depo., 29:11-23, Kim Dec., ¶ 2, Ex. A).

While Mr. Brewster showered, Deputy Mills often gazed at his naked body through the open port. (Brewster Depo., 21:21-23:12, Kim Dec., ¶ 2, Ex. A). In fact, Mr. Brewster regularly caught Deputy Mills looking at him and would ask him to close the port, but Deputy Mills largely ignored Mr. Brewster and pretended not to hear his requests. (*Id.*; 30:9-24, 31:14-32:5). Sometimes, Deputy Mills would even approach the shower to get a closer look at Mr. Brewster's body. (Brewster Depo., 31:21-24, Kim Dec., ¶ 2, Ex. A). Deputy Mills would then tell Mr. Brewster that he had a nice-sized penis and make other comments, such as liking his size and the way his penis looked. (Brewster Depo., 16:19-17:8, 23:5-8, 32:1-5, Kim Dec., ¶ 2, Ex. A).

In addition to the unwanted sexual comments, Deputy Mills would commonly refer to himself as "daddy." (Brewster Depo, 32:6-18, Kim Dec., ¶ 2, Ex. A). He called himself "daddy" to Mr. Brewster, and to other young male prisoners. *Id.* Deputy Mills also used handcuffing as an opportunity to touch Mr. Brewster. (Brewster Depo., 32:25-33:15, Kim Dec., ¶ 2, Ex. A.). Mr. Brewster testified that Deputy Mills "put the handcuffs on too tight, and, like, he had – but he tried to make it seem like it's a part of the procedure, like, basically, like – he would touch me." (Brewster Depo, 32:23-33:3, Kim Dec., ¶ 2, Ex. A). On one such occasion, Deputy Mills slid his hands between Mr. Brewster's buttocks while applying handcuffs to him. (Brewster Depo., 33:7-11, Kim Dec., ¶ 2, Ex. A).

Agustin Garcia, another young prisoner housed in Pod 2A, alleged that Deputy Mills would apply handcuffs so tightly and say that it was sexy when he displayed pain. ECF No. 1. On or about April 3, 2020, Mr. Brewster witnessed Deputy Mills kiss a young male prisoner on the cheek. (Brewster Depo., 33:21-34:14, 39:4-20, 41:4-6, Kim Dec., ¶ 2, Ex. A). The prisoner, Khalid Barrow, did not consent to the kiss and filed his own separate lawsuit, which is currently in litigation.

*Khalid Shakir Barrow v. Stephen Tilton, et al.*; Case No. 5:20-cv-04099-BLF (Mr. Barrow alleges that Deputy Mills kissed and squeezed his genitals).

### 2. April 15, 2020 Incident

On April 15, 2020, Deputy Mills decided to leave the pod unsupervised, despite a prisoner being outside of his cell, so that he could accompany Deputy Omar Prado serve a Request for Discipline ("RFD") to Mr. Brewster. (Mills Depo., 68:24-71:3, Kim Dec., ¶ 3, Ex. B; Brewster Depo., 57:21-58:25, Kim Dec., ¶ 2, Ex. A). Rather than serve the RFD through the food port or under the door, Deputy Prado and Deputy Mills opened the door of Mr. Brewster's cell to deliver it. (Mills Depo., 72:22-74:17, Kim Dec., ¶ 3, Ex. B; Brewster Depo., 59:10-17, Kim Dec., ¶ 2, Ex. A). At this time, the deputies attempted to provoke Mr. Brewster by calling him names, cursing at him, and saying inappropriate things to him. (Brewster Depo., 59:18-61:2, Kim Dec., ¶ 2, Ex. A; Mills Depo., 75:20-77:2, Kim Dec., ¶ 3, Ex. B).

Once they delivered the RFD and closed the cell door, Deputy Mills continued to taunt Mr. Brewster, saying, "the door was just opened, you could have done anything you wanted to do. You just had your chance." (Brewster Depo., 61:4-63:19, Kim Dec., ¶ 2, Ex. A; Mills Depo., 77:8-78:19, Kim Dec., ¶ 3, Ex. B). Indeed, Deputy Mills testified, "I remember watching the [surveillance camera footage of the incident]. I was coming in and out and in and out and in and out, and then I walked downstairs. So I'm not – I'm sure we were going back and forth about something." (Mills Depo., 78:16-19, Kim Dec., ¶ 3, Ex. B). When interviewed by the IAU about the incident, Deputy Mills admitted to making inappropriate comments during this interaction and in the past. (IAU Summary Report dated December 15, 2020 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_001130-35, attached as Exhibit A to the Declaration of EmilyRose Johns in Opposition to Motion for Summary Judgment, ("Johns Dec."), ¶ 2; Excerpt from the transcript of an interview of Deputy Mills dated August 5, 2019 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_1300-01, attached as Exhibit B to the Johns Dec., ¶ 3).

Deputy Mills finally walked away and started descending the staircase. As he did so, he exclaimed, "it's my jail. I'll do what I want. I'll make you suck my dick till my knees buckle," while

shaking his knees and raising his arms. (Brewster Depo., 61:11-17, 62:15-17, 68:23-69:1, Kim Dec., ¶ 2, Ex. A). Deputy Mills made this gesture four times, which was captured on surveillance footage. (Defendants' video, Exhibit B). Another prisoner corroborated Mr. Brewster's account. (CCSF-Brewster_1132, Johns Dec., ¶ 2, Ex. A). Mr. Brewster immediately verbally complained to Deputy Mills about his conduct, asked Deputy Prado to intervene, and verbally complained to Lieutenant James Shannon later that evening. (Brewster Depo., 49:5-50:13, Kim Dec., ¶ 2, Ex. A).

### 3. April 16, 2020 Incident and Safety Cell Placement

After verbally complaining, Mr. Brewster grieved the incident and attempted to give the grievance to Lieutenant James Shannon, who responded that the grievance would probably end up in the trash. (Brewster Depo., 82:13-15, 82:24-83:18, 84:1-12, 86:3-23, Kim Dec., ¶ 2, Ex. A). Mr. Brewster ultimately gave the grievance to Deputy Anthoni Nguyen and Deputy Jordan Seng the next day. (Brewster Depo., 83:16-18, 91:21-92:13, Kim Dec., ¶ 2, Ex. A). Deputy Seng testified that Mr. Brewster probably did provide him with a grievance on April 16, 2020. (Deposition of Jordan Seng ("Seng Depo."), 36:7-9, attached as Exhibit C to the Kim Dec., ¶ 4). The deputies did not sign Mr. Brewster's grievance and otherwise did not return him his copy. (Brewster Depo., 93:16-18, ¶ 2, Ex. A).

Lieutenant Shannon testified that upon receipt of a grievance, a sworn staff member is expected to read it, initial it, and handle it at the lowest level, if possible. (Deposition of James Shannon, 24:3-22, attached as Exhibit D to the Kim Dec., ¶ 5). Deputy Seng testified the same. (Seng Depo., 24:24-26:8, Kim Dec., ¶ 4, Ex. C). A grievance that cannot be handled at the lowest level is turned over to a supervisor. (Seng Depo., 26:23-27:7, Kim Dec., ¶ 4, Ex. C). A grievance regarding sexual harassment and/or sexual assault may be handled by a deputy or a supervisor. (Seng Depo., 27:8-30:1, Kim Dec., ¶ 4, Ex. C). Deputy Seng stated that he had no reason to believe he did anything other than read Mr. Brewster's grievance and submit it to his supervisor. (Seng Depo., 36:10-14, Kim Dec., ¶ 4, Ex. C).

Later the same day, Deputy Seng accused Mr. Brewster of "gassing" him, or throwing an unknown liquid substance towards him. (Seng Depo., 38:18-25, Kim Dec., ¶ 4, Ex. C). Mr. Brewster disputes this. (Brewster Depo., 60:16-18, ¶ 2, Ex. A). Deputy Nguyen notified Lieutenant

Shannon of the "gassing." (Seng Depo., 42:1-17, Kim Dec., ¶ 4, Ex. C). Lieutenant Shannon instructed Deputy Seng to change to a different uniform, place the uniform with the liquid on it in a paper bag, write a report, and take a photo afterwards. (Seng Depo., 42:18-43:6, Kim Dec., ¶ 4, Ex. C). Deputy Seng never took a photo of his clothing, despite testifying that he did. (Incident Report dated April 16, 2020 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_000001-06, attached as Exhibit E to Johns Dec., ¶ 6). Nothing ever came of the report and Deputy Seng never learned what the substance was. (Seng Depo., 43:7-12, Kim Dec., ¶ 4, Ex. C). Mr. Brewster was subsequently placed in a safety cell. (Seng Depo., 43:20-24, Kim Dec., ¶ 4, Ex. C). Lieutenant Shannon participated in placing Mr. Brewster into the safety cell. (Incident Report, attached as Exhibit E to Johns Dec., ¶ 4). Following his placement, Mr. Brewster submitted a grievance that after returning to his cell from the safety cell, he observed his possessions missing. (Prisoner Grievance Form, Kim Dec., ¶ 8, Ex. G).

On the same day Mr. Brewster filed his grievance, Deputy Nguyen submitted a RFD stating that, "[i]nmate CENIOUS Brewster has been making it habit to falsify statements in the form of grievances. CENIOUS outlandish comments and accusations not only is a violation of RFD Rule 22: No inmate shall falsify any record or document or forge the signature of any other person, but it discredits the grievance process. By constantly flooding the grievance system with non-truthful statements it makes it harder to address credible grievances from other inmates that have issues that need to be address. CENIOUS is under the belief that he can use grievances as a tool to attack the deputy's integrity. Grievances should be taken seriously and are not for creating false claims. CENIOUS' actions to manipulate the grievance process hurts the jail system as a whole. Cenious threatened me by stating he will create fake lawsuits when I asked him if he could be truthful when we speak together." (Incident Report dated October 23, 2020 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_000115, attached as Exhibit E to the Kim Dec., ¶ 6).

### 4. Retaliation

Mr. Brewster and Mr. Garcia filed this lawsuit on May 13, 2020. ECF No. 1. After filing his grievances and lawsuit, Deputy Mills continued to threaten and harass Mr. Brewster. Mr. Brewster

alleged that Deputy Mills targeted him, called him a snitch, betted on inmates to fight, threatened him, called him racial slurs, and categorized him as MR4 in his housing card. (CCSF-Brewster_001131-32, Johns Dec., ¶ 2, Ex. A; Brewster Depo., 54:9-11, Kim Dec., ¶ 2, Ex. A). On May 19, 2020, Mr. Brewster alleged Deputy Prado flipped him off. (Brewster Depo., 80:4-15, Kim Dec., ¶ 2, Ex. A). When interviewed by IAU about it, Deputy Prado admitted to it. (IAU Summary Report dated January 5, 2021 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_001414-1417, attached as Exhibit C to the Johns Dec., ¶ 4; Excerpt of a transcript of an interview of Deputy Prado dated July 22, 2020 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_001427, attached as Exhibit D to the Johns Dec., ¶ 5).

CCSF "assigns mandatory restraint levels when such restraints are necessary based on the prisoner's security risk whenever the prisoner is out of his or her cell and whenever the prisoner is being transported out of the facility." (San Francisco Sheriff's Department Mandatory Restraint Levels, produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_000228, attached as Exhibit F to the Kim Dec., ¶ 7). MR0 denotes no special restraints necessary and is the default mandatory restraint levels for most detainees. (*Id.*) MR4 "denotes the prisoner must be handcuffed with belly chains and leg irons and escorted by two deputies." (*Id.*). Despite Mr. Brewster never attempting to escape or committing battery on a peace officer, Deputy Mills categorized him as MR4 without explanation. (Excerpt from the transcript of an interview of Mr. Brewster dated June 9, 2019 produced by defendant in response to plaintiff's discovery requests, Bates stamped CCSF-Brewster_1067, 1072-73, attached as Exhibit F to the Johns Dec., ¶ 7).

### 5. Grievances

Mr. Brewster testified that deputies trashed many of his grievances. (Brewster Depo., 51:12-25, Kim Dec., ¶ 2, Ex. A). One of his grievances was declared invalid because he wrote outside the lines. (CCSF-Brewster 70, Exhibit F to Johns Dec., ¶ 8). On September 14, Mr. Brewster requested to be credited days after his lockup was dismissed. (CCSF-Brewster 66, Exhibit F to Johns Dec., ¶ 8). On September 23, Mr. Brewster requested to have his MR level reduced. (CCSF-Brewster 65,

Exhibit F to Johns Dec., ¶ 8). Sergeant Tilton rejected his request. (*Id*.). Mr. Brewster believed that filing grievances would not resolve anything but subject him to more harassment. (Declaration of Cenious Brewster in Opposition to Motion for Summary Judgment, ¶ 1).

## III. ARGUMENT

### 1. Legal Standard

Summary judgment is a drastic remedy, and therefore the Court must act with caution when considering it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rules Civ. Proc., Rule 56(c). The court must accept all facts presented by the non-moving party as true and draw all reasonable inferences in the light most favorable to the opposing party. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir.1987); *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011).

The moving party has a burden of production to either disprove an essential element of the opposing party's claim or to show that the opposing party does not have sufficient evidence of an essential element of its claim. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party also has an ultimate burden of persuasion to demonstrate the absence of any genuine issues of material fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 630. If the moving party meets its burden of production, the opposing party must set forth specific facts showing there is a genuine issue of material fact for trial. *Id.*

A fact is material if it may affect the outcome of the case as determined by the applicable substantive law. *Anderson*, 477 U.S. at 248. A genuine issue exists if the evidence is sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing party. *Id.* at 248-250. The opposing party need only present enough evidence to require the trier of fact "to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

The Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Service, Inc.*, 809 F.2d at 630-31. "Summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014).

### 2. Deputy Mills' Unwanted Sexual Comments, Conduct, and Contact Served No Legitimate Penological Purpose

"[S]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Bearchild v. Cobban*, 947 F.3d 1130, 1143 (9th Cir. 2020) (citing *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012)). The Ninth Circuit held that "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id.* at 1144. A prisoner, therefore, states "an Eighth Amendment claim under Section 1983 for sexual harassment if the alleged sexual harassment was sufficiently harmful, i.e., a departure from 'the evolving standards of decency that mark the progress of a maturing society,' and the defendant acted with intent to harm the prisoner." *Jones v. Darden*, 2016 WL 4585765 at *2 (N.D. Cal. 2016) (referencing *Thomas v. District of Columbia*, 887 F. Supp. 1, 3-4 (D.D.C. 1995) and *Hudson v. McMillian*, 503 U.S. 1, 6, 8 (1992)).

"Where there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" *Wood*, 692 F.3d at 1050 (9th Cir. 2012) (citing *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999). And in such cases, "no lasting physical injury is necessary to state a cause of action." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Accordingly, a prisoner will satisfy the objective and subjective components required of the Eighth Amendment if he can show "that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the [conduct]." *Bearchild*, 947 F.3d at 1145 (9th Cir. 2020).

Deputy Mills referring to himself as "daddy," taking Mr. Brewster to the shower daily and more frequently for the purpose of looking at his naked body, commenting on his penis,

threatening that he will make Mr. Brewster "suck his dick until his knees buckle," and sliding his hand between Mr. Brewster's buttocks served no legitimate penological purpose. Such conduct only served to humiliate, degrade, and demean Mr. Brewster while also sexually gratify Deputy Mills. Indeed, Deputy Mills conceded that he made inappropriate comments to Mr. Brewster. As such, Mr. Brewster is not required to show that Deputy Mills acted with a malicious or sadistic state of mind, nor that he suffered significant harm.

### 3. Mr. Brewster Demonstrated that Deputy Mills' Sexual Harassment was Egregious, Pervasive and/or Widespread

The Ninth Circuit acknowledged that "sexual abuse in prison is prolific." *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012) (citing Brenda V. Smith, *Sexual Abuse of Women in United States Prisons: A Modern Corollary of Slavery*, 33 Fordham Urb. L.J. 571 (2006)). As such, in 2012, the court explicitly held that "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Id.* at 1046. Relying predominantly on cases decided in 2004, defendants argue that verbal sexual harassment is insufficient to state an Eighth Amendment violation. ECF No. 22-24 (citing *Minifield v. Butikofer*, 298 F.Supp.2d 900, 904 (N.D. Cal. 2004), *Blacher v. Johnson*, 517 F. App'x 564 (9th Cir. 2013), and *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)). Defendants are wrong.

In addition to being outdated, the facts in *Minifield*, 298 F.Supp.2d 900 (N.D. Cal. 2004) are distinguishable from Mr. Brewster's case. In that case, the plaintiff alleged that two corrections officers sexually harassed him. *Id.* at 902. One officer did so by unzipping his clothes and telling the plaintiff to grab his penis on two occasions. *Id.* The other held a candy bar by his genitals and motioned it up and down while directing it at the plaintiff. *Id.* The plaintiff did not allege that either officer exposed their genitals or touched him in a sexual manner. *Id.* Here, Mr. Brewster alleges that Deputy Mills used the handcuffs as an opportunity to touch him and in fact touched his buttocks. This occurred while Deputy Mills engaged in frequent escorts of Mr. Brewster to the shower and used that opportunity to gaze at Mr. Brewster's penis. Deputy Mills commented on Mr. Brewster's penis regularly and referred to himself as "daddy."

The unpublished Ninth Circuit case in *Blacher v. Johnson*, 517 F. App'x 564 (9th Cir. 2013) provides little assistance to defendants in light of the published opinion in *Wood* and the

distinguishable facts. In *Blacher*, the plaintiff alleged only verbal sexual harassment. *Id*. Mr. Brewster testified that Deputy Mills did more than mere verbally sexually harass him. He also testified that Deputy Mills inappropriately touched him in a sexual manner, commented on his penis, and threatened to make Mr. Brewster perform a sexual act on him. Mr. Brewster further testified that he witnessed Deputy Mills kiss the cheek of another prisoner, against his will. All such conduct lacked legitimate penological justification, unlike the visual body cavity searches at issue in *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), which the Court in *Blacher* used to support its decision.

Finally, defendants cite *Austin*, 367 F.3d 1167 (9th Cir. 2004) which involved a corrections officer who exposed and shook his penis from a large glass window for about 30 to 40 seconds while telling the plaintiff to "come suck this white boy dick, boy." *Id*. at 1169. The Ninth Circuit explained that the Eighth Amendment claim was properly dismissed on summary judgment because the officer "never physically touched [the plaintiff]." *Id*. at 1172. However again, Mr. Brewster testified that Deputy Mills did physically touched him and subjected to him to sexual harassment throughout the month of April and not just on one occasion.

*Jones*, 2016 WL 4585765 (N.D. Cal. 2016) is instructive. In *Jones*, the Court addressed *Minifield* and *Austin* and concluded that "[f]inding an Eighth Amendment violation where there has been a physical component to the abuse is not the same as requiring the physical component as an element [] based on sexual harassment" and that, "[h]olding that verbal sexual harassment does not 'necessarily' violate the Eighth Amendment does not mean that it can never violate the Eighth Amendment." *Id*. at *2. There, the Court held that "[i]n the absence of authority that a prisoner must allege physical contact to state a valid Eighth Amendment claim based on sexual harassment, the Court cannot conclude that Plaintiff's allegations are insufficient as a matter of law simply because he did not allege the Defendant touched or physical assaulted him." *Id*. at *3. The plaintiff in that case alleged that the defendant solicited him for sex, stalked him, and threatened to retaliate against him. *Id*. at *1-2.

It is undisputed that Deputy Mills escorted Mr. Brewster to the shower frequently, swiped his buttocks, made comments about his penis, and gestured at Mr. Brewster. Although defendants

further cite *Schwenk*, 204 F.3d 1187 (9th Cir. 2000); *Hill v. Rowley*, 658 F. App'x 840 (9th Cir. 2016); and *Wood*, 692 F.3d 1041 (9th Cir. 2012) (Ninth Circuit cases that involved physical contact between the plaintiff and the corrections officer), these cases do not establish a rule requiring physical touching, or as defendants argue, analogous facts akin to skin-to-skin contact, intimate body parts exposed, prolonged groping, rubbing, or other sexually stimulating movements. ECF No. 42 at 23:23-24. These three cases, rather, illustrate sexual harassment claims that involve a physical component under the Eighth Amendment. Where the facts are predominately verbal sexual harassment, it is sufficient that the plaintiff show that the sexual harassment he was subjected to was egregious, pervasive, and/or widespread, as Mr. Brewster has done so here. *Jones*, No. 15-CV-02022-JSC, 2016 WL 4585765, at *2 (N.D. Cal. Sept. 2, 2016).

### 4. Classifying and Keeping Mr. Brewster on MR4 Status Without Meaningful Review Violated his Due Process Rights

Defendants argue that its classification of Mr. Brewster as MR4 did not violate his due process rights because such classification fell within the expected perimeters of his lawful confinement. ECF No. 42 at 24. Defendants primarily rely on *Sandin v. Conner*, 515 U.S. 472 (1995) to suggest that Mr. Brewster's MR4 status "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Following *Sandin*, the Ninth Circuit opined that "[w]hat less egregious condition or combination of conditions or factors would meet the [atypical and significant hardship] test requires case by case, fact by fact consideration." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998).

Within CJ3, there are 5 different mandatory restraint levels, the default being MR0 which denotes no special restraints are necessary, and the most restrictive being MR4. Mr. Brewster presented facts that he was categorized as MR4 without receiving notice of the charges against him and without a hearing. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983) (requiring that "[a]n inmate [] receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to [maintain the charges]."). MR4 status mandated that anytime Mr. Brewster was outside of his cell, he was to be handcuffed with belly chains and leg irons and escorted by two deputies at all times. Such disciplinary imposition was atypical and

presented a significant hardship to Mr. Brewster. *See Barrett v. Ciolli*, No. 120CV01802NONEEPGPC, 2021 WL 1752043, at *7 (E.D. Cal. May 4, 2021) ("A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution" (internal quotations and citations omitted)); *see also Bowell v. Montoya*, No. 117CV00605NONEGSAPC, 2021 WL 1889645, at *2 (E.D. Cal. May 10, 2021) ("However, under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process.")).

Mr. Brewster requested review of his MR4 status, but his request to be taken off it were denied. The reason for his initial MR4 status was not explained to him. He believes he was categorized as such in retaliation for filing grievances.

### 5. Mr. Brewster was Retaliated Against for Submitting Grievances

"Of fundamental import to prisoners are their First Amendment right[s] to file prison grievances, and to pursue civil rights litigation in the courts." *Rhodes v. Robinson*, 408 F.3d 559, 567-78 (9th Cir. 2005) (internal quotations omitted). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) the prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." *Id.* (internal quotations omitted). "Conduct taken in retaliation for the exercise of a constitutionally-protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Newman v. Cty. of Ventura*, No. CV 09-4160-JVS (RC), 2010 WL 1266719, at *7 (C.D. Cal. Mar. 8, 2010), *report and recommendation adopted*, No. CV 09-4160-JVS (RC), 2010 WL 1266725 (C.D. Cal. Mar. 26, 2010). It is well established that retaliatory discipline is a violation of the First Amendment. *Rhodes*, 408 F.3d 559, 569 (9th Cir. 2005); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Moreover, timing is sufficient to show causation. *See Pratt*, 65 F.3d at 808 (9th Cir. 1995).

Verbal complaints are also protected activities. *See, e.g.*, *Ahmed v. Ringer*, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855, at *4 (E.D. Cal. Feb. 5, 2015) ("[T]he court finds that

plaintiff's verbal complaint about the July 2, 2012 search and seizure of his property constitutes protected conduct under the First Amendment for purposes of a retaliation claim."), *report and recommendation adopted*, 2015 WL 1119675 (E.D. Cal. Mar. 11, 2015); *West v. Dizon*, No. 2:12-cv-1293 MCE DAD P, 2014 WL 794335, at *5 (E.D. Cal. Feb. 27, 2014) ("The First Amendment's protection in this context is not limited to the form submission of a complaint against a prison staffer."), *report and recommendation adopted*, 2014 WL 1270584 (E.D. Cal. Mar. 26, 2014). Defendants argue that summary judgment should be granted because deputies Mills, Prado, and Nguyen, Lieutenant Shannon, and Captain Tilton were not present and did not play a role in placing Mr. Brewster in the safety cell or disciplinary housing, and that Deputy Seng's reasonable belief that he was gassed provided a legitimate purpose for Mr. Brewster's subsequent discipline.

Mr. Brewster verbally complained to deputies Mills and Prado following the April 15, 2020 incident. Mr. Brewster also verbally complained to Lieutenant Shannon and attempted to give him his grievance. Lieutenant Shannon responded that his grievances would be trashed. The following day, Mr. Brewster submitted his grievance to deputies Nguyen and Seng. Deputy Seng testified that he probably did receive Mr. Brewster's grievance on April 16, 2020, read it, and give it to a supervisor. As to Deputy Nguyen, the inference most favorable to Mr. Brewster is that he knew the contents of Mr. Brewster's grievance because he subsequently brought an RFD against Mr. Brewster for filing "false" grievances. Additionally, there is a genuine dispute as to whether Mr. Brewster "gassed" Deputy Seng, which resulted in his safety cell placement that Lieutenant Shannon directly participated in. Deputy Mills subsequently categorized Mr. Brewster as MR4.

**6. It was Clearly Established that Egregious, Pervasive and/or Widespread Sexual Harassment and Retaliation violates the Constitution**

Officers are not entitled to qualified immunity when, "taking the facts in the light most favorable to the nonmoving party, the officers' conduct violated a constitutional right," and "that right was clearly established at the time of the alleged misconduct." *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). The Court may address either question first. *See Pearson*, 555 U.S. at 236. On a motion for summary judgment, the Court must deny qualified immunity where there are unresolved issues of fact. *See Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming denial of qualified

immunity where there were questions of fact regarding the first prong of the qualified immunity test); *see also Castro*, 2016 WL 1569976, at *12 (N.D. Cal. Apr. 19, 2016) (quoting *Blankenhorn*, 485 F.3d at 481) (finding that triable issues of fact preclude a grant of qualified immunity).

Defendants cite *Blueford v. Prunty*, 108 F.3d 251 (9th Cir. 1997) to contend that the Ninth Circuit found that a corrections officer was entitled to qualified immunity despite making "strong sexual suggestions accompanied by demonstrative actions" such as grabbing prisoners' hands and pulling them towards his genitals, grabbing his own genitals and referring to sex, and demanding anal sex. *Id*. at 252, 255. In 2000, the Ninth Circuit addressed a similar issue in *Schwenk*, and explained "[o]ur holding in [*Blueford*] was specifically predicated on the fact that the officer in question never actually touched the prisoner but only subjected him to *verbal* abuse." *Schwenk*, 204 F.3d at 1198 (9th Cir. 2000). It concluded that "[t]he minimum consequences a sexually predatory guard should anticipate for such conduct is civil liability," *Id*., and denied qualified immunity because the defendant made forcible sexual contact with the plaintiff. Yet, even if there is no physical contact, it is clearly established that sexual harassment that is egregious, pervasive and/or widespread violates the Constitution. *See Jones*, No. 15-CV-02022-JSC, 2016 WL 4585765, at *2 (N.D. Cal. Sept. 2, 2016) (references *Jordan v. Gardner*, 986 F.2d 1521, 1525-31 (9th Cir. 1993) and *Watson v. Jones*, 980 F.2d 1165, 1165-66 (8th Cir. 1992).

Defendants do not dispute that Deputy Mills touched Mr. Brewster's buttocks, that Mr. Brewster was subjected to sexual harassment and threats throughout April 2020, and that he witnessed Deputy Mills sexually harass other young men. Therefore, the defendants are not entitled to qualified immunity as to his sexual harassment claim.

Defendants further argue that they are entitled to qualified immunity because his placement in the safety cell did not violate clearly established law. Defendants cite *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 191 L.Ed. 2d 856 (2015), a factually irrelevant case in that it involved officers reentering a private room and a mentally ill plaintiff outside of the carceral setting. *Id*. As to retaliation, the Ninth Circuit reiterated its "firm recognition that 'the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes.'" *Rhodes*, 408 F.3d 559, 569 (9th Cir. 2005) (citing

*Pratt*, 65 F3d at 806)). There is a genuine dispute of material fact here as to whether or not Mr. Brewster's subsequent safety placement, MR4 categorization, and lockup was retaliatory. Accordingly, defendants are not entitled to qualified immunity on his retaliation claim either.

### 7. Mr. Brewster Exhausted all Administrative Remedies Available to Him Regarding the Safety Cell Placement and Retaliation

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). "The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion." *Washington v. Stark*, No. 118CV00564LJOSABPC, 2019 WL 343133, at *1 (E.D. Cal. Jan. 28, 2019) (references omitted). Defendants are "entitled to summary judgment under Rule 56 *only* if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust." *Id.* (internal reference omitted) (emphasis added).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016). The Court in *Ross* provided a non-exhaustive list of ways that the administrative remedy is unavailable. *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) "[A]n administrative procedure is unavailable" (1) "when [] it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* 136 S. Ct. at 1860. Exhaustion is also unavailable "[w]hen prison officials improperly fail to process a prisoner's grievance[.]" *Andres*, 867 F.3d at 1079. In that circumstance, "the prisoner is deemed to have exhausted available administrative remedies [because jail officials] have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable. *Id.* (quoting *Ross*, 136 S.Ct. at 1859).

Other circumstances where administrative remedies may be unavailable include the threat of retaliation for reporting an incident and the improper rejection of a grievance on procedural grounds. Sapp v. Kimbrell, 623 F.3d 813, 822–23 (9th Cir. 2010). *See also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) ("[T]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies."); *Boyce v. Fox*, No. 214CV1743KJMKJNP, 2018 WL 3031528, at *8 (E.D. Cal. June 15, 2018 (collecting cases where the grievance process was unavailable).

Defendants argue that Mr. Brewster did not exhaust his administrative remedies to the extent his claims are based on the safety cell placement or any subsequent retaliation. ECF No. 42 at 16, 29-31. Mr. Brewster did not exhaust his administrative grievances about retaliation. However, exhaustion as to that claim is excused due to the jail officials thwarting of his grievance and intimidation against filing a grievance, rendering exhaustion unavailable.

"To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." McBride, 807 F.3d at 987 (9th Cir. 2015). "If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable." *Id.*

Mr. Brewster was threatened against for filing grievances and written up and punished for filing grievances. This threat was documented by jail officials. Jail officials removed the one avenue he had to make his complaint about the retaliatory Request for Discipline and placement in the safety cell, and they therefore rendered exhaustion unavailable. Mr. Brewster demonstrated his objectively reasonable belief that he would be retaliated against for filing grievances.

### 8. Prisoners Are Entitled to Recover Compensatory, Nominal, or Punitive Damages

Defendant argues that plaintiff is precluded by the PLRA from seeking compensatory emotional distress damages for sexual harassment and because he did not suffer more than *de minimus* physical injury. ECF No. 42 at 31:4-22. Defendants do not, nor could they, challenge Mr. Brewster's entitlement to damages for constitutional injury, nominal damages, and punitive damages. *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) ("To the extent that appellant has actionable claims for compensatory, nominal or punitive damages—premised on violations of his

Fourteenth Amendment rights, and not on any alleged mental or emotional injuries—we conclude the claims are not barred by § 1997e(e).") *See also Green v. Thompson*, No. C 10-5721 WHA PR, 2012 WL 761697, at *5 (N.D. Cal. Mar. 7, 2012) ("Claims for declaratory and injunctive relief are unaffected by Section 1997e(e) [] as are claims for nominal or punitive damages [for defendants' sexual harassment of prisoner-plaintiff]."); *Colvin v. Sanchez*, No. 14-CV-05400-LB, 2020 WL 1450555, at *7 (N.D. Cal. Mar. 25, 2020) (PLRA "does not bar claims seeking nominal or punitive damages that are not premised on any specified injury.") Although Mr. Brewster did not suffer a physical injury from Deputy Mills' sexual harassment, he may seek damages for sexual harassment premised on the constitutional, nominal, and punitive damages theories.

Further, as defendants acknowledge, Mr. Brewster suffered a bloodied mouth and shoulder from his placement in a safety cell. The requisite physical injury "need not be significant but must be more than *de minimis*." *Oliver*, 289 F.3d at 627. Mr. Brewster's injuries were more than *de minimis*. *Monclova-Chavez v. McEachern*, No. 1:08-CV-00076-AWI, 2011 WL 39118, at *6 (E.D. Cal. Jan. 5, 2011), *report and recommendation adopted*, No. 1:08-CV-00076-AWI, 2011 WL 976476 (E.D. Cal. Mar. 17, 2011) ("significant bruises, weakness and numbness in his shoulder" and exacerbation of earlier injuries was sufficient.") In *Oliver*, the plaintiff admitted that his injuries were "nothing too serious." 289 F.3d at 629. Here, plaintiff makes no such concession. Mr. Brewster is therefore entitled to recover for nominal and punitive damages premised on his sexual harassment claim for compensatory, nominal or punitive damages stemming from the physical injuries he suffered.

### 9. Defendants Violated Mr. Brewster's Federal and State Rights by Threats, Intimidation and Coercion

California Civil Code section 52.1 provides individual civil actions for damages and injunctive relief to plaintiffs whose federal and state rights were violated by threats, intimidation, or coercion. Cal. Civ. Code § 52.1(a); *Garlick v. County of Kern*, 167 F. Supp. 3d 1117, 1178 (E.D. Cal. 2016). "[I]f a plaintiff makes factual allegations showing a constitutional violation based on excessive force, a plaintiff need not, in addition, introduce independent evidence showing threats, intimidation, or coercion." *Garlick*, 167 F. Supp. 3d at 1179; *see also Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City and County of San Francisco*, 17

Cal.App.5th 766, 225 Cal.Rptr.3d 356, 382-83 (2017) ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."). A plaintiff can show that an officer acted intentionally if the officer acted with disregard to his or her constitutional rights. *Reese*, 888 F.3d at 1045.

Defendants argue that they are entitled to summary judgment on this claim because Mr. Brewster lacks evidence to establish any of the elements. Mr. Brewster, however, demonstrated that he was subjected to unwanted sexual harassment and threats, and was retaliated against for grieving such harassment. If the Court denies summary judgment as to Mr. Brewster's federal claims, it must also deny summary judgment on his Bane Act claim.

## IV.     CONCLUSION

For the foregoing reasons, defendants' motion must be denied.


Dated: June 10, 2021

SIEGEL, YEE, BRUNNER & MEHTA

By:  _/s/ Andrew Chan Kim_
         Andrew Chan Kim

Attorneys for Plaintiff
CENIOUS BREWSTER