United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENIOUS BREWSTER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL T MILLS, et al.,<br><br>　　　　　　Defendants. | Case No. 20-cv-03254-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND GRANTING ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. No. 42, 52, 61, 78 |

Pending before the Court is Defendants' motion for summary judgment. Dkt. No. 42. The Court held a hearing on the motion. For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I.  **BACKGROUND**

Plaintiff Cenious Brewster filed this action against the City and County of San Francisco and several officers at the San Francisco County Jail #5 in San Bruno, where Plaintiff was incarcerated.[1] *See* Dkt. No. 33 ("TAC"). Plaintiff alleges that he was sexually harassed by Deputy Mills, and retaliated against both by Deputy Mills and the other individual Defendants for complaining about the harassment. As indicated below, many of the facts are disputed.

Plaintiff testified during his deposition that Deputy Mills would watch Plaintiff while he showered and frequently make sexual comments about Plaintiff's body. *See* Dkt. No. 43-1, Ex. A ("Brewster Depo.") at 10:5–11:4; 16:15–18:16; 20:23–23:12; 30:9–32:22; 32:23–33:11. When asked if Deputy Mills ever touched Plaintiff, he described a single incident in which Deputy Mills

---

[1] Plaintiff brings this action against the City and County of San Francisco; San Francisco Sheriff Deputies Anthoni Nguyen, Jordan Seng, Daniel Mills, Omar Prado; Chief Deputy Sheriff Stephen Tilton; and Lieutenant Sheriff James Shannon. *See* TAC at ¶¶ 5–10.

put on Plaintiff's handcuffs and in the process "swipe[d] [his] behind a little bit, like, one time." *Id.* 32:–33:11.

Plaintiff also testified that on April 15, 2020, Deputy Mills and Deputy Prado came to Plaintiff's cell to serve a Request for Discipline ("RFD") unrelated to this lawsuit. *See id.* at 57:21–58:17; Dkt. No. 43-3, Ex. C ("Mills Depo.") at 68:24–71:3. According to Plaintiff, he believed that they were trying to provoke him by calling Plaintiff names, cursing at him, and saying inappropriate things to him. *See* Brewster Depo. at 59:18–25. The parties disagree about the nature of this interaction. Deputy Mills testified that Plaintiff threatened to beat up and kill him. *See* Mills Depo. at 75:20–77:2. In response, Deputy Mills said he walked downstairs shaking his hands and knees and told Plaintiff sarcastically "I'm shaking in my boots." *See id.* at 76:15–18; *see also* Dkt. No. 60-4, Ex. A at 3–6. Plaintiff, however, testified that Deputy Mills said: "[T]his is my jail, I do what I want. And I'll make you suck my dick until my knees buckle or till my knees shaking."[2] *See* Brewster Depo. at 61:12–17, 62:15–17. Deputy Prado did not hear Deputy Mills say anything sexual or sex-related to Plaintiff at any time during this interaction. *See* Dkt. No. 51 ("Prado Decl.") at ¶ 2.

Following the incident, Plaintiff testified that he verbally complained to Deputies Mills, Prado, and Lieutenant Shannon about Deputy Mills' behavior. *See id.* at 49:24–4. The next day, on April 16, 2020, Plaintiff also tried to file an administrative grievance by giving it to Lieutenant Shannon, but he told Plaintiff to give it to one of the deputies instead. *See id.* at 82:24–87:9, 91:7–92:19. At approximately 3:00 p.m., Plaintiff gave his written grievance to Deputies Nguyen and Seng. *Id.* However, Plaintiff believes that the grievance was "trashed" because he never received his signed copy. *See id.* at 92:22–93:24; 95:24–96:7.

The parties also disagree about events that occurred later that evening. According to Deputy Seng, at approximately 10:00 p.m. when he attempted to close the food port on Plaintiff's cell door, Plaintiff "gassed" him, meaning Plaintiff "threw an unknown liquid substance." *See*

---

[2] Although the audio of this incident is not part of the video recording, there is security footage showing Deputy Mills shaking his knees and waiving his hands above his head several times. *See* Dkt. No. 43-2, Ex. B.

Dkt. No. 43-4, Ex D ("Seng Depo.") at 39:17–42:13. Deputy Seng said that Plaintiff later told others in the jail that it was urine. *See id.* at 43:10–16. Deputy Seng told Deputy Nguyen that Plaintiff gassed him, and Deputy Nguyen notified their supervisor, Lieutenant Shannon, and the watch commander Lieutenant Martindale, of the incident. *See id.* at 42:1–46:3; *see also* Dkt. No. 56 at ¶¶ 8–10. Lieutenant Martindale asserts that based on the information from Defendant Seng, he determined that Plaintiff had "demonstrated physical combativeness and dangerousness," and directed three other deputies to transport Plaintiff to a safety cell. *See id.* at ¶¶ 9–10. Although not present the night of the incident, Captain Tilton later reviewed and approved of the safety cell placement based on the information he had received about the incident. *See* Dkt. No. 49 at ¶¶ 2–4. Captain Tilton stated that he was not aware of any grievance filed against Deputy Mills at the time he approved Plaintiff's safety cell placement, and there is no record of this grievance. Dkt. No. 49 ("Tilton Decl.") at ¶¶ 4–5; *see also* Dkt. No. 48 ("Mann Decl.") at ¶ 7; Dkt. No. 48 ("Shannon Decl.") at ¶ 10, & Ex. A. Plaintiff asserts that he did not throw anything at Deputy Sang, and argues that he was placed in a safety cell as retaliation for filing a grievance against Deputy Mills. *See* Brewster Depo. at 93:25–95:23. Plaintiff testified that while he was in the safety cell, Deputy Seng walked by and said "this is what [you] get for making up false allegations . . . ." *See id.* at 98:13–20, 15–22.

In May 2020, Lieutenant Shannon and Captain Tilton investigated Plaintiff's allegations of sexual harassment. *See* Shannon Decl., Ex. A. Captain Tilton interviewed Plaintiff, who described the April 15 encounter with Deputies Mills and Prado. *Id.* He said there were no other instances where he felt sexually harassed, and said that Deputies Mills and Prado had not touched him in a sexual or inappropriate manner. *Id.* Nevertheless, Plaintiff alleges that since filing this lawsuit in May 2020, Deputy Mills has continued to harass him. *See* Brewster Depo. at 53:24–54:11. Plaintiff further alleges that Deputy Mills changed Plaintiff's "mandatory restraint level" to "MR4" without justification, which requires Plaintiff to be handcuffed with belly chains and leg irons and escorted by two deputies when he leaves his cell. *See* Dkt. No. 60-2, Ex. F.

Based on these allegations, Plaintiff brings claims against Defendants under 42 U.S.C § 1983 for violations of (1) the Eighth Amendment for sexual abuse and harassment; (2) the First

3

Amendment for retaliation; (3) Plaintiff's due process rights under the Eighth Amendment;[3] and (4) the California Bane Act.[4] *See* TAC at ¶¶ 41–64.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

### B. Discussion

Although the parties dispute most of the key facts in this case, Defendants nevertheless seek summary judgment on all causes of action. *See* Dkt. No. 42. *First*, they contend that Plaintiff has failed to present evidence to support his claims against Defendants for sexual abuse and harassment; retaliation; and due process violations. *See id.* at 17–28. *Second*, they contend that Defendants are entitled to qualified immunity for Plaintiff's claims for sexual harassment and retaliation in any event. *Id.* at 29. The Court begins with the question of qualified immunity as to

---

[3] Although Plaintiff references the Eighth Amendment in his TAC, he cites cases involving the Due Process Clause under the Fourteenth Amendment. *See* Dkt. No. 60 at 12–13; *see also Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prisoners may [] claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.").

[4] Plaintiff has conceded his *Monell* claims. *See* Dkt. No. 60 at 2. The Court therefore finds that summary judgment is warranted on this claim.

4

Plaintiff's sexual abuse and sexual harassment claim.

    **i. Qualified Immunity**

        **a. Legal Standard**

The doctrine of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Supreme Court has noted, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 535 U.S. 194, 201 (2001)). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).

        **b. Analysis**

Plaintiff alleges that Deputy Mills sexually abused and harassed him beginning in April 2020. *See* TAC at ¶¶ 41–43. According to Plaintiff, in addition to telling Plaintiff that he would make him "suck my dick until his knees buckle," Deputy Mills also harassed Plaintiff while he showered. *See* Brewster Depo. at 61:12–17, 62:15–17. Plaintiff testified that Deputy Mills took him to shower almost daily during the first week of April 2020. *See id.* at 17:9–18:5, 27:3–6. Typically, a deputy would handcuff and escort a single inmate to the shower at a time. *See id.* at 18:6–21, 21:21–22:18. The deputy would let the inmate into the shower; lock the door; then remove the handcuffs through a port in the door. *See id.* at 21:21–22:18, 23:21–24:20. Plaintiff states that after doing so, Deputy Mills would sometimes look at him while he showered through the window in the door, and make comments about Plaintiff's penis after he got out of the shower. *See id.* at 16:19–17:8, 22:19–23:12, 30:19–32:22. On one occasion, for example, Deputy Mills said "[t]hat's a nice size you got on you." *Id.* at 52:22–24. Plaintiff also said that Defendant Mills

5

would sometimes refer to himself as "daddy" to Plaintiff and other inmates. *See id.* at 32:6–18. Plaintiff said that one time while he was showering, Deputy Mills told him to "[h]urry up and finish the shower so Daddy can take you to the room . . . ." *Id.* at 32:14–22. Plaintiff further explained that on one occasion, when putting handcuffs back on Plaintiff to return to his cell, Deputy Mills "swipe[d] [his] behind a little bit, like, one time." *Id.* 32:–33:11.

There is no question that if these allegations are true, this conduct was highly inappropriate and unacceptable. However, the question for purposes of qualified immunity is whether this conduct deprived Plaintiff of a constitutional right, and whether that right was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232.

The Eighth Amendment prohibits cruel and unusual punishment in prisons. The Supreme Court has instructed that whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). And as the Court recently explained, the law regarding sexual abuse and sexual harassment has changed over time. *See Anderson v. Ferguson*, No. 20-CV-04368-HSG, 2022 WL 767191, at *7–*9 (N.D. Cal. Mar. 14, 2022). The current Eighth Amendment jurisprudence focuses on whether the alleged sexual harassment had a "legitimate penological justification," and was intended to sexually gratify the perpetrator or to "humiliat[e], degrad[e], or demean[]" the inmate. *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

Here, the alleged sexual abuse and harassment fall into two categories: a single incident of unwanted touching and persistent verbal harassment. Accepting Plaintiff's account of the alleged touching as true, when Deputy Mills "swiped" Plaintiff's buttocks, it was in the process of putting handcuffs on Plaintiff after his shower. *See* Brewster Depo. at 33:7–11. Plaintiff acknowledged that the handcuffs "seemed too loose" at first, so Deputy Mills tightened them and "swipe[d] [his] behind a little bit" in the process. *Id.* But Plaintiff admits that it is standard practice for deputies to handcuff inmates when transporting them to and from the shower, and to handcuff inmates with their hands behind their backs. *See id.* at 18:17–21, 33:14–15. The Ninth Circuit has also found that handcuffing an inmate has a valid penological purpose. *See Keenan v. Hall*, 83 F.3d 1083,

6

1092 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) ("[F]or the protection of staff and other inmates, prison authorities may place a dangerous inmate in shackles and handcuffs when they move him from his cell."); *see also Bearchild*, 947 F.3d at 1145 (recognizing the "significant deference courts owe to prison staff, who work in challenging institutional settings with unique security concerns").

"[W]here the allegation is that a guard's conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Bearchild*, 947 F.3d at 1145. However, Plaintiff has not explained how this "swipe" exceeded the scope of putting on handcuffs to secure Plaintiff during his walk back to his cell.[5] To the contrary, the evidence in the record indicates that Plaintiff told Lieutenant Shannon that Deputy Mills had never touched him in a sexual or inappropriate manner. *See* Shannon Decl., Ex. A. Plaintiff also does not offer any evidence disputing Lieutenant Shannon's account of their conversation in the incident report. Moreover, the Ninth Circuit has found that even brief, inappropriate touching may not be cognizable under the Eighth Amendment. *See, e.g.*, *Watson v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (finding prison guard's conduct was "not objectively harmful enough" to state Eighth Amendment claim where guard allegedly entered inmate's cell while he was on the toilet and rubbed his thigh against the inmate's thigh while smiling). Even viewing this incident in the light most favorable to Plaintiff, the touching appears merely incidental to putting on handcuffs. Plaintiff has failed to explain how this nonetheless constitutes an Eighth Amendment violation, and the Court finds that a jury could not reasonably find that Deputy Mills touched Plaintiff in a sexual manner that was intended to humiliate or degrade him.

Defendants do not suggest that there is a penological purpose for Deputy Mills' vulgar statements. *See* Dkt. No. 66 at 8. Rather, they argue that verbal harassment alone does not violate the Eighth Amendment, and even if it does, this was not clearly established at the time of Deputy

---

[5] To the extent Plaintiff argues in his opposition brief that Deputy Mills "slid[] his hand between Mr. Brewster's buttocks" and made Plaintiff shower against his will, Dkt. No. 60 at 3, 10, there is simply no evidence of this in the record, and these assertions grossly misstate Plaintiff's deposition testimony.

7

Mills' alleged conduct. *See* Dkt. No. 42 at 22–24, 29. The Court agrees.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*; *see, e.g.*, *Pearson*, 555 U.S. at 243–45 (concluding that officers were entitled to qualified immunity because their conduct was not clearly established as unconstitutional because the "consent-once-removed" doctrine, upon which the officers relied, had been generally accepted by the lower courts even though not yet ruled upon by their own federal circuit).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *See id.* Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002). It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Id.*

Prisoners have a clearly established Eighth Amendment right to be free from sexual abuse. *See, e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1197–98 (9th Cir. 2000) (holding that "a reasonable prison guard simply could not have believed that he could with impunity enter the cell of a prisoner [], unzip his pants, expose himself, demand oral sex, and then, after being refused, grab the prisoner, push her up against the bars of the cell, and grind his naked penis into her buttocks."). However, whether verbal harassment alone violates the Eighth Amendment appears

8

to remain an open question. The Ninth Circuit has stated that "verbal harassment generally does not violate the Eighth Amendment." *Keenan*, 83 F.3d at 1092. In *Keenan*, the Court affirmed the grant of summary judgment based on verbal harassment, but left open the possibility that there could be a set of circumstances under which verbal harassment could violate the Constitution. *Id.* The Court suggested that verbal harassment may violate the Eighth Amendment when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Id.* The Ninth Circuit did not, however, detail what type of verbal harassment could meet this high standard. And since *Keenan*, the Court has repeatedly held that "the Eighth Amendment's protections do not extend to mere verbal sexual harassment." *See Blacher v. Johnson*, 517 F. App'x 564 (9th Cir. 2013); *Austin v. Terhune*, 367 F.3d 1167, 1171–72 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (citation omitted); *Blueford v. Prunty*, 108 F.3d 251–55 (9th Cir. 1997) (rejecting argument that "a right under federal law to be free of puerile and vulgar same-sex trash talk" was clearly established).

Given this case law, Plaintiff's allegations—even if accepted as true—do not appear to rise to the level of a constitutional violation. And even if this could be considered a close question today, the right to be free from all verbal harassment was not clearly established at the time of Deputy Mills' conduct.

Plaintiff suggests that the Ninth Circuit's 2020 opinion in *Bearchild* somehow changed this landscape, expanding the definition of sexual assault to include verbal harassment and not just touching.[6] *See* Dkt. No. 60 at 9–12. Plaintiff points out that under *Bearchild*:

> [A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner *or otherwise engaged in sexual conduct* for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner.

---

[6] The Ninth Circuit's opinion in *Bearchild* was issued in January 2020, a few months before Deputy Mills' alleged harassment in April 2020.

9

*Id.* at 9 (citing *Bearchild*, 947 F.3d at 1144) (emphasis added). Here, the Ninth Circuit explicitly refers to "touching" a prisoner in a sexual manner, but also includes a catch-all provision for other "sexual conduct." *Id.* The Court agrees that this suggests touching or contact may not be required to state a viable claim under the Eighth Amendment. But like in *Keenan*, the Ninth Circuit in *Bearchild* did not explain what kind of verbal harassment could be sufficient on its own to violate the Eighth Amendment. *Bearchild* itself involved sexual contact, and not just verbal harassment.

In *Bearchild*, the plaintiff testified that a prison guard conducted a lengthy pat-down search that "involved rubbing, stroking, squeezing, and groping in intimate areas." *See* 947 F.3d at 1134–35. The plaintiff also stated that the guard "ordered him to pull his waistband away from his body, stared at his penis, and asked, 'Is that all of you?'" *Id.* at 1135. The Ninth Circuit considered whether the jury instructions misstated the elements of plaintiff's Eighth Amendment claim when they required the plaintiff to demonstrate that the guard had used excessive and unnecessary force under all of the circumstances; acted maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore discipline; and had caused harm to the inmate. *See id.* at 1139–48. The Court reasoned that the jury instructions were plainly erroneous because (1) courts must presume malicious and sadistic intent where there is no legitimate penological purpose for a prison official's conduct, such as in the case of sexual assault; and (2) plaintiffs need not prove that an injury resulted from sexual assault because "[a]ny sexual assault is objectively repugnant to the conscience of mankind" and therefore not *de minimis*. *Id.* at 1044–48. The Court highlighted its prior case law in which it found that "sexual *contact* between a prisoner and a prison guard serves no legitimate role and 'is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 1143 (quoting *Wood v. Beauclair*, 692 F.3d 1041, 1050 (9th Cir. 2012) (emphasis added)).

Even if the Court in *Bearchild* intended to expand the scope of Eighth Amendment violations beyond sexual contact, it simply had no occasion to hold what sort of verbal harassment would—on its own—violate the Eighth Amendment. Particularly in light of the numerous Ninth Circuit cases holding that verbal harassment generally does not violate the Eighth Amendment, the Court does not find that the holding in *Bearchild* was sufficiently clear to put reasonable officers

10

on notice that the conduct alleged here violated Plaintiff's constitutional rights. *Accord Moore v. Calderon*, No. 120CV00397DADBAMPC, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (citing cases).

The Court is not persuaded by the reasoning of Plaintiff's two non-binding cases, *Jones v. Darden*, No. 15-CV-02022-JSC, 2016 WL 4585765, at *2 (N.D. Cal. Sept. 2, 2016), and *Watson v. Jones*, 980 F.2d 1165, 1165–66 (8th Cir. 1992). In *Watson*, the female inmate complained of "daily routine pat-down searches for [] two months," which "consisted of tickling and a deliberate examination of the genital, anus, lower stomach and thigh areas." 980 F.2d at 1165–66. The case does not appear to address solely verbal harassment. In *Jones*, the court rejected the defendants' argument that they were entitled to judgment on the pleadings because the plaintiff had not alleged that there was any touching or physical assault. 2016 WL 4585765, at *2–*3. The court's brief analysis noted that the Ninth Circuit may have left open the possibility that verbal harassment could be enough to violate the Eighth Amendment. *See id.* But the court did not consider the scope of such Eighth Amendment protection, and did not consider whether any such right was clearly established for purposes of qualified immunity. The Court does not find that this is one of those "rare" cases where in the absence of binding precedent, the Court can nevertheless conclude that the law was clearly established. *See Sorrels*, 290 F.3d at 971–72.

\*   \*   \*

The Court cannot condone the conduct alleged in this case. And it seems clear that the Ninth Circuit is moving toward more expansive protections for prisoners under the Eighth Amendment. However, the Court cannot say that it was clearly established in April 2020 that Deputy Mills' verbal harassment alleged in this case violated the Eighth Amendment. The Court finds that Defendants are entitled to qualified immunity on this claim.

### ii. Due Process

Next, Defendants challenge Plaintiff's due process claim against Lieutenant Shannon and Captain Tilton. *See* Dkt. No. 42 at 24–25; *see also* Dkt. No. 66 at 11–12. Plaintiff argues that he was wrongly categorized as "MR4," despite having "never shown aggression and/or been violent towards a deputy and/or other jail staff." *See* TAC at ¶ 50. In his opposition brief, Plaintiff asserts

11

that Deputy Mills actually categorized Plaintiff as MR4 in retaliation for complaining about his conduct. *See* Dkt. No. 60 at 6–7. However, the only evidence Plaintiff points to about his "MR4" status is a note from a June 2020 interview with Plaintiff in which he stated that Deputy Mills "put MR4 on his Field Arrest Card and made him walk by himself during 'walk time.'" *See* Dkt. No. 60-4, Ex. A at CCSF-BREWSTER_001131–32. Plaintiff does not explain the import of "MR4" on his Field Arrest Card, or provide evidence that this categorization was inappropriate. *See* Dkt. No. 45 ("Mills Decl."); Dkt. No. 59-2, Ex. A. The only evidence before the Court suggests that Plaintiff had at least previously participated in fights among inmates and did not immediately follow orders from the guards. *See id.*

In any event, Plaintiff does not bring this due process claim against Deputy Mills. Instead, he appears to argue that Lieutenant Shannon and Captain Shannon are responsible for "maintaining" this status. *See* TAC at ¶ 50. In his opposition brief, Plaintiff argues that he "requested review of his MR4 status, but his request to be taken off it were [*sic*] denied," and the reason for his MR4 status was never explained to him. *See* Dkt. No. 60 at 12–13. In a stipulation to amend his opposition, Plaintiff adds grievances that he filed about Deputy Mills' alleged retaliatory conduct in designating him as MR4. *See* Dkt. No. 63; *see also* Dkt. No. 63-1, Ex. A. Plaintiff asserts that "these grievances were received and signed but never addressed." *See* Dkt. No. 63-1 at 8. But critically, Plaintiff offers no evidence that Lieutenant Shannon and Captain Tilton were aware of or otherwise involved in this process at all. To survive summary judgment, Plaintiff must put forward sufficient evidence for a reasonable trier of fact to find that Defendants were somehow responsible for his MR4 status, and that they somehow deprived him of his due process rights as a result. There is simply no evidence at all supporting Plaintiff's due process claim against Lieutenant Shannon and Captain Tilton. The Court therefore **GRANTS** summary judgment in favor of Defendants as to this claim.

### iii. Retaliation

Lastly, Defendants challenge Plaintiff's First Amendment retaliation claim against Deputies Mills, Prado, Nguyen, Seng, Lieutenant Shannon, and Captain Tilton. *See* Dkt. No. 42 at 25–31. Plaintiff alleges that he engaged in First Amendment protected activity when he

"submitted grievances for sexual harassment, misuse of the safety cell, and retaliation," and when he filed this lawsuit. *See* TAC at ¶ 45. Plaintiff further alleges that Deputies Mills, Nguyen, Prado, Seng, and Lieutenant Shannon retaliated against him for submitting his grievances when they "imposed and carried out discipline against" Plaintiff. *Id.* at ¶ 46. Plaintiff's only allegation against Captain Tilton is that he "approved the disciplinary action against" Plaintiff and "failed to meaningfully investigate his grievances." *See id.* at ¶ 47. Plaintiff is vague about what specific "disciplinary action" he actually challenges as retaliatory. In his opposition brief, he suggests that Defendants retaliated against him by placing him in a safety cell after the alleged "gassing" incident with Deputy Seng, and by categorizing him as "MR4." *See* Dkt. No. 60 at 13–14.

As explained in Section II.B.iii above, there is no evidence supporting Plaintiff's claims that his MR4 status was inappropriate, let alone retaliatory. As to the safety cell placement and any subsequent retaliatory conduct, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. *See* Dkt. No. 42 at 29–31; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Plaintiff appears to concede this point. *See* Dkt. No. 60 at 17 ("Mr. Brewster did not exhaust his administrative grievances about retaliation."). However, Plaintiff argues that exhaustion was nevertheless unavailable to him because he was "threatened against for filing grievances and written up and punished for filing grievances." *See id.* He therefore urges that he has a reasonable belief that exhausting his administrative remedies as to the retaliatory conduct at issue here was futile. *Id.*

The Supreme Court has held that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016). To show that a threat rendered the prison grievance system unavailable, "a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). "If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable." *Id.*

Here, Plaintiff argues that his prior grievances were not taken seriously, and that he

13

1   believed he would be retaliated against if he tried to follow the grievance system. *See* Dkt. No. 60
2   at 6, 16–17. He testified that following the April 15 incident with Deputy Mills, for example, he
3   tried to file an administrative grievance with Lieutenant Shannon, who would not accept it and
4   told Plaintiff to give it to one of the deputies instead. *See* Brewster Depo. at 82:24–87:9, 91:7–
5   92:19. Plaintiff said he then gave his written grievance to Deputies Nguyen and Seng, but he
6   thought the grievance was "trashed" because he never received his signed copy. *See id.* at 92:22–
7   93:24; 95:24–96:7. Instead of receiving a signed copy of his grievance, Plaintiff points out that
8   Deputy Nguyen submitted an RFD the same day Plaintiff filed his grievance, which stated that
9   "[i]nmate CENIOUS Brewster has been making it habit to falsify statements in the form of
10  grievances." *See* Dkt. No. 60-2, Ex. E. And according to Plaintiff, when he was put in a safety
11  cell following the alleged "gassing" incident, Deputy Seng walked by and said "this is what [you]
12  get for making up false allegations . . . ." *See id.* at 98:13–20, 15–22. Plaintiff thus suggests that
13  he not only believed that he would be retaliated against for filing further grievances, but that he
14  had in fact been retaliated against.

15  Defendants respond that Plaintiff's testimony about his subjective fear of retaliation is
16  undermined by the multiple grievances he filed months after his alleged retaliatory safety-cell
17  placement in April 2020. *See* Dkt. No. 66-2, Ex. A (grievance forms). Defendant urges that
18  Plaintiff's assertion that the grievance system was effectively unavailable to him is not credible.
19  *See* Dkt. No. 66 at 17. The Court agrees that this evidence casts doubt on Plaintiff's contention.
20  But viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's
21  allegations are sufficient to raise a triable issue of fact as to whether the administrative remedies
22  were unavailable to Plaintiff. The Court therefore **DENIES** summary judgment on this basis.

23  The Ninth Circuit has directed that when a motion for summary judgment for failure to
24  exhaust is denied, disputed factual questions relevant to exhaustion should be decided by the judge
25  after an evidentiary hearing. *See Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014)
26  (permitting limited preliminary proceeding to "decide disputed questions of fact"). If Defendants
27  want to pursue this affirmative defense, the Court will therefore need to hold an evidentiary
28  hearing about whether Plaintiff exhausted his administrative remedies under the Prison Litigation

14

Reform Act.[7]

### III. MOTIONS TO SEAL

#### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotations omitted). This

---

[7] The parties appear to agree that Plaintiff's Bane Act claim is based on the same conduct underlying his federal claims. *Compare* Dkt. No. 42 at 31–32, *with* Dkt. No. 60 at 18–19. The Court cannot say at this stage whether any federal claims will survive, and the Court would not exercise supplemental jurisdiction over the Bane Act claim if no federal claim remains. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). The Court accordingly **DENIES** the motion for summary judgment as to the Bane Act claim, without prejudice to Defendants reraising the issue once the Court determines following the evidentiary hearing whether any federal claims may proceed.

1   requires a "particularized showing" that "specific prejudice or harm will result" if the information
2   is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th
3   Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific
4   examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966
5   F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

### B. Discussion

Because the parties seek to seal documents which pertain to Defendants' motion for summary judgment and the parties' motions in limine, the Court applies the compelling reasons standard. Dkt. Nos. 52, 61, 78. These documents include deposition transcripts and exhibits that reference Plaintiff's medical records and private health information that are unrelated to the claims in this case, and are unnecessary for the public to understand this case. These documents also contain private personnel and security information about the San Francisco Sheriff's Department in the county jail. These documents reveal matters affecting safety, security, and practices at the county jail, as well as surveillance footage from inside the jail that is not otherwise publicly available and displays third parties who are not parties to the action. The Court concludes that Defendants have identified legitimate security concerns that warrant keeping these documents under seal.

Moreover, the Court did not rely on any of the documents related to the motions in limine since the Court vacated the trial date. *See* Dkt. No. 98. Thus, these documents are unrelated to the public's understanding of the judicial proceedings in this case, and the public's interest in disclosure of these documents is minimal given that the Court will not rule on the motions in limine. *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL 12335013, at *2 (N.D. Cal. Nov. 25, 2013) ("The public's interest in accessing these documents is even further diminished in light of the fact that the Court will not have occasion to rule on Plaintiffs' Motion for Class Certification."). The Court therefore **GRANTS** this motion to seal.

### IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment. Defendants are entitled to qualified immunity on Plaintiff's sexual abuse and

16

sexual harassment claim. The Court further **GRANTS** summary judgment as to Plaintiff's due process claim. However, the Court finds that an evidentiary hearing is necessary to determine whether Plaintiff exhausted his administrative remedies as to his retaliation claim. The Court further **TERMINATES** the parties' motions in limine without prejudice to refiling if this case ultimately proceeds to trial. Dkt. Nos. 74–76, 79–83.

The Court **SETS** a telephonic case management conference on April 19, 2022, at 2:00 p.m. The parties should be prepared to discuss how to move this case forward expeditiously, including the timing of an evidentiary hearing and whether the parties may benefit from a magistrate judge settlement conference to address the remaining issues. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The joint case management statement is due April 12, 2022.

The Court **GRANTS** the administrative motions to seal. Pursuant to Civil Local Rule 79-5(g)(1), documents filed under seal as to which the administrative motions are granted will remain under seal.

**IT IS SO ORDERED.**

Dated: 3/31/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

17